(No. 60062.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHN SZABO, Appellant.

*Opinion filed June 20, 1986.—Rehearing denied September 26, 1986.*

CLARK, C.J., and SIMON, J., dissenting.

Charles M. Schiedel, Deputy Defender, of Springfield, and Verlin Meinz and Beth Katz, Assistant Defenders, of Ottawa, all of the Office of the State Appellate Defender, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Marie Quinlivan Czech, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

Defendant, John Szabo, was indicted by a Will County grand jury on two counts of intentional murder, two counts of felony murder, and one count of conspiracy to

commit armed robbery. Defendant waived a jury trial and in July 1979 was tried before the circuit court of Will County. He was found guilty on all counts. The State requested a death penalty hearing pursuant to section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(d)). Defendant chose to have a jury for this hearing. The jury sentenced defendant to death for the murders. In addition, the court imposed a three-year sentence on the conspiracy charge.

Defendant then appealed to this court pursuant to article VI, section 4(b), of the 1970 Illinois Constitution and Supreme Court Rule 603 (73 Ill. 2d 603). This court held that the circuit court had erroneously refused to order the State to produce certain discovery materials for *in camera* inspection. (*People v. Szabo* (1983), 94 Ill. 2d 327, 350.) Defendant's convictions were vacated and the cause remanded to the circuit court so that the materials could be reconstructed and inspected by the court. If the circuit court found that the materials were discoverable, then defendant was to be granted a new trial. (94 Ill. 2d 327, 350.) If the materials were found to be nondiscoverable, then defendant's convictions were to be reinstated, except that judgment was to be entered on only two counts of murder since defendant had been charged in alternative counts arising out of only two deaths. (94 Ill. 2d 327, 350.) Finally, this court vacated defendant's death penalty because of errors at sentencing. 94 Ill. 2d 327, 357, 367.

On remand, copies of the missing materials—notes taken by an assistant State's Attorney during pretrial interviews with the prosecution's main witness—were discovered in the State's files and tendered to the circuit court. After an *in camera* inspection the court found that the materials were "work product," were not impeaching, and did not raise a reasonable doubt as to defendant's guilt. The court then reinstated defendant's convictions.

The State again requested a death penalty hearing,

and defendant chose to have a jury decide whether the death penalty would be imposed. The jury voted to impose the death penalty. Defendant again appeals directly to this court.

Defendant raises a single question with regard to the guilt phase of his trial: Did the trial court fail to follow the mandate of this court when it reinstated defendant's conviction? In addition, defendant raises six additional questions regarding the sentencing phase: (1) Was it error to allow the State to read into evidence transcripts of testimony from the earlier sentencing hearing without demonstrating the unavailability of the witnesses whose testimony was read? (2) Was it error to deny defendant's motion *in limine* asking to restrict cross-examination of defendant? (3) Did the prosecutor's comments during closing argument deny defendant a fair hearing? (4) Did the court's instruction to the jury that they should not consider sympathy for the defendant, when coupled with the prosecutor's statement that the jury should not consider "compassion," deny defendant a fair hearing? (5) Does this court's finding that *Davis v. Georgia* (1976), 429 U.S. 122, 50 L. Ed. 2d 339, 97 S. Ct. 399, was violated at defendant's first death penalty hearing forever bar the State from imposing the death penalty upon defendant? and (6) Was the death penalty an unconstitutionally disproportionate sentence when compared to the sentence received by another participant in the murders? Defendant also raises eight questions regarding the constitutionality of the Illinois death penalty statute: Does the statute (1) fail to adequately narrow to a unique and cognizable group those persons eligible for the death penalty; (2) violate constitutional equal protection guarantees by restricting the imposition of the death penalty when the defendant requires special assistance to be fit for trial; (3) improperly place upon defendant the burden of proving that death is an inappropriate penalty; (4) improperly al-

low the prosecutor unbridled discretion as to when the death penalty will be sought; (5) improperly fail to provide a means to assure that all aggravating factors relied upon were relevant and constitutionally permissible; (6) improperly fail to require that the State prove beyond a reasonable doubt the absence of mitigating factors sufficient to preclude imposition of the death penalty; (7) improperly fail to require the sentencer to find that death is the appropriate penalty; and (8) improperly fail to provide adequate procedures for appellate review of death sentences? Finally, the State on cross-appeal raises one additional question: Did defendant waive all sentencing issues by failing to file a post-sentencing motion?

The facts adduced at defendant's trial are dealt with at length in this court's earlier opinion (94 Ill. 2d 327, 334-42), and thus we need not go into detail regarding those facts. For purposes of this appeal, however, it is necessary to know that the State's key witness at trial was Robert Leatherman, a coparticipant in the alleged robbery and murders. Leatherman had spoken several times prior to trial to William Ford, then an assistant State's Attorney. At three of these sessions Ford had taken handwritten notes. On the day of trial defendant moved to discover these notes pursuant to Supreme Court Rule 412(a)(i) (73 Ill. 2d R. 412(a)(i)). Ford claimed that these notes had been destroyed, and argued that they were nondiscoverable work product. However, he offered to provide defendant with an eight-page "trial plan" summarizing Leatherman's expected testimony. He also offered to reconstruct the notes if ordered to do so by the court. The circuit court, however, denied defendant's discovery motion.

On appeal this court held that the circuit court should have ordered that the notes be reconstructed and tendered to the court for an *in camera* inspection. (94 Ill. 2d 327, 345.) This court's conclusion regarding the interview

notes was as follows:

"We are unable, on the record before us, to determine whether defendant was prejudiced by the nondisclosure of the interview notes. It may be that they contained summaries of pretrial statements by Leatherman that were entirely consistent with his trial testimony and of no value for impeachment. Or it may be that they consisted mainly of the assistant State's Attorney's mental impressions and opinions, which would be privileged from disclosure. Or it may be that they contained prior statements flatly contradicting Leatherman's trial testimony on one or more points, or possibly revealing an unsuspected motive for Leatherman's testifying as he did, or giving such varying accounts as would have greatly discredited his testimony. We simply cannot tell what opportunities for cross-examination, if any, were denied Szabo by the nondisclosure of the notes. Consequently, we cannot say either that the nondisclosure resulted in prejudicial error, or that any error that occurred was harmless beyond a reasonable doubt. As the determination depends upon the contents of the destroyed notes, we believe the appropriate course is to vacate the convictions and remand the cause to the circuit court for entry of an order directing the State to reconstruct the written memoranda of Leatherman's pretrial statements, and to deliver them to the court for an *in camera* inspection. In the event the court finds the notes to contain discoverable, substantially verbatim statements, it should deliver them to defense counsel and order a new trial. In the event the reconstructed notes are found not to contain substantially verbatim reports of Leatherman's pretrial statements, the circuit court is directed to reinstate defendant's convictions, subject to our discussion below of defendant's superfluous murder convictions." 94 Ill. 2d 327, 349-50.

After remand defendant obtained a new appointed attorney. On November 1, 1983, the trial judge explained the posture of the case to the newly appointed attorney:

"Briefly, the present posture of this cause is this. In essence, the Supreme Court has directed the Court to exam-

ine in camera the reconstructed notes of the interviews conducted by Mr. Ford of Mr. Leatherman, the main witness at the prosecution, and that if the Court feels that there is impeachable material that was contained within those notes the Court is then to grant a new trial on all charges to Mr. Szabo.

If the Court is of the opinion after examining the notes in camera that there are no impeachable matters contained in the information, then the Court is to reinstate the convictions and proceed to a sentencing hearing in accordance with the convictions."

After remand, it was discovered that Ford's handwritten notes had been destroyed only after being transferred into typewritten form. These typewritten notes were in fact in the State's files. Thus, instead of reconstructing Ford's handwritten notes, the State tendered to the court the typewritten transcription of those notes.

The court later informed the parties he would have to review Robert Leatherman's trial testimony in order to determine whether the typewritten notes were discoverable. After reviewing the notes and Leatherman's testimony the court denied discovery and reinstated defendant's convictions, explaining this action as follows:

"And the Court considering the contents of the notes in camera, as directed by the Supreme Court, in the Court's opinion the notes [that] were presented were the work product of Mr. Ford, that they contain no impeachable material which would have assisted defense counsel in cross-examination of Mr. Leatherman, and that they do not raise any question of defendant's guilt beyond a reasonable doubt.

Therefore, the Court pursuant to the mandate is reinstating the Felony Murder convictions of defendant. Defendant is not entitled to a new trial."

Later, in denying defendant's motion for a new trial the court further explained its position regarding the notes and this court's mandate:

"The Supreme Court mandate also directed that [the

notes] *** were to be examined by the Court in camera, for the Court to determine whether or not any impeachable material was contained therein which could assist the defendant in his defense at the time of the trial.

The Court has reviewed those typewritten notes in camera. And the Court had previously issued its judgment that there were—there was no impeachable material contained in the three statements of the typewritten notes taken by Mr. Ford of his interviews with Mr. Leatherman, and that, therefore, the notes should be impounded for review by any review Court, and that also pursuant to the mandate that in the event the Court finds that there was no impeachable matter contained therein, that the Court could reinstate the prior judgments of conviction as to felony murder, and conduct a new sentencing hearing, however, as the prior sentence had been vacated. And that is the posture of the case, at this time."

Defendant argues that the trial court erred in finding that the notes in question were work product, and also erred in focusing on the notes' impeachment value. We agree with defendant's first contention. The notes appear to be merely a shorthand transcription of the witness' own statements. The fact that the notes contain paraphrases of the witness' statements instead of the witness' own words does not prevent the notes from being "substantially verbatim reports of oral statements" as described in Rule 412. (*People v. Bassett* (1974), 56 Ill. 2d 285, 290-92.) In civil cases such notes would enjoy a qualified "work-product" privilege. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 109-10.) However, in criminal cases the work-product privilege applies to substantially verbatim attorney notes only if "they contain the opinions, theories or conclusions" of the attorney. (73 Ill. 2d R. 412(j).) There is no reason to distinguish the notes in the case at bar from those held to be discoverable in *Bassett*.

This does not mean, however, that the trial court

erred in reinstating defendant's convictions. Violation of the discovery provisions in Rule 412 does not require reversal of a conviction unless prejudice is shown. (*People v. Wright* (1985), 111 Ill. 2d 128, 152; *People v. Greer* (1980), 79 Ill. 2d 103, 120.) The trial court examined the notes in question and decided that they contained no impeaching material. Defendant has now seen the notes, and can point to nothing in them which would impeach Leatherman's testimony. Further, this court has also examined the notes, and we agree with the trial court's findings.

Defendant argues, however, that this court's mandate in the first *Szabo* opinion (94 Ill. 2d 327, 350) required a new trial merely upon a finding that the notes contained discoverable material, regardless of any lack of prejudice. However, at the time of the first *Szabo* opinion this court did not have the benefit of examining the notes, and thus could not speculate on their contents. An examination of that earlier opinion reveals that the court was indeed concerned with the possibility that the notes contained nothing of any value to the defense. (See 94 Ill. 2d 327, 349-50.) At this juncture, having examined the notes and finding that defendant was not prejudiced by their nondisclosure, we see no reason to grant a new trial. Defendant's conviction is therefore affirmed.

Defendant also raises several issues regarding his second sentencing hearing. However, he filed no post-trial motion after this hearing, and therefore the State argues that any sentencing issues are waived. We agree. In a capital case the jury's determination whether the death penalty will be invoked is part of the "trial." Failure to raise trial errors in a post-trial motion, as required by section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 116—1), waives those errors. (*People v. Wright* (1985), 111 Ill. 2d 128, 148; *People v. Precup* (1978), 73 Ill. 2d 7, 16.) An exception to this

rule is when "plain error" is committed. (See 87 Ill. 2d R. 615(a).) Plain error, however, is "a narrow and limited exception to the general waiver rule" (*People v. Pastorino* (1982), 91 Ill. 2d 178, 188), to be invoked only when the error alleged is "so substantial as to deprive defendant of a fair trial" (*People v. Pastorino* (1982), 91 Ill. 2d 178, 189).

Defendant's first sentencing issue involves transcripts of prior testimony which were introduced at his second sentencing hearing. The State, over defendant's objections, was allowed to introduce transcripts of the testimony of five witnesses who had testified at defendant's first sentencing hearing. At the first hearing the witnesses had been subject to cross-examination. However, at the second sentencing hearing the State made no attempt to demonstrate that the witnesses were unavailable.

At the guilt phase of a trial the confrontation clause of the sixth amendment (U.S. Const., amend. VI) operates to prohibit the use of prior testimony unless the State demonstrates that the prior witness is now unavailable. (*Ohio v. Roberts* (1980), 448 U.S. 56, 65, 65 L. Ed. 2d 597, 607, 100 S. Ct. 2531, 2538.) In addition to this "rule of necessity" the prior testimony must also be shown to be trustworthy by demonstrating that it bears accepted "indicia of reliability." *Ohio v. Roberts* (1980), 448 U.S. 56, 65-66, 65 L. Ed. 2d 597, 607-08, 100 S. Ct. 2531, 2539.

It is not clear whether the unavailability requirement applies at sentencing as well as during the guilt phase of the trial. There is, however, no question that the prior testimony in the case at bar, which took place in open court and was fully cross-examined by defendant's counsel, meets the Supreme Court's tests for trustworthiness. (See *Ohio v. Roberts* (1980), 448 U.S. 56, 72-73, 65 L. Ed. 2d 597, 612, 100 S. Ct. 2531, 2542; *Mancusi v. Stubbs*

(1972), 408 U.S. 204, 213, 33 L. Ed. 2d 293, 302, 92 S. Ct. 2308, 2313.) Since the testimony bears sufficient "indicia of reliability," the error in its admission, if any, was not substantial enough to warrant review under the plain-error rule.

Defendant also argues that the court erred in denying his motion *in limine* which sought to restrict cross-examination of defendant. Defendant wished to take the stand in his own behalf and testify solely to his conduct since being incarcerated. He moved to prohibit cross-examination regarding the murders with which he was charged. The circuit court denied the motion, and the defense introduced, as an offer of proof, defendant's testimony that he would have taken the stand if his *in limine* motion had been granted. Defendant did not, however, testify before the jury.

*Skipper v. South Carolina* (1986), 476 U.S. 1, 90 L. Ed. 2d 1, 106 S. Ct. 1669, specifically holds that a defendant, during a capital sentencing hearing, has the right to introduce evidence of good conduct during his incarceration. It is clear, however, that defendant was not denied the right to present such evidence. The trial court merely required that defendant's testimony be subject to the same impeachment as any other witness. A defendant in a death penalty sentencing hearing has no right of "allocution" (*People v. Williams* (1983), 97 Ill. 2d 252, 303-04), and it thus follows that there is no right to address the jury without facing impeachment. We therefore find no plain error in the denial of defendant's *in limine* motion.

Defendant also argues that he was prejudiced by certain remarks during the prosecution's closing argument to the sentencing jury. Defendant, however, did not object at the time the remarks were made. We have examined the prosecutor's closing arguments and find no error substantial enough to amount to plain error.

Defendant also argues that the instruction to the jury

that "neither sympathy nor prejudice should influence you," when coupled with the prosecutor's argument to the jurors asking them to disregard "compassion" for defendant, deprived him of a fair hearing. This court has specifically upheld the use of the instruction in question at death penalty hearings. (*People v. Perez* (1985), 108 Ill. 2d 70, 92; *People v. Stewart* (1984), 104 Ill. 2d 463, 494.) Moreover, the prosecutor's comments were not objected to. We find no plain error.

Defendant also argues that the violation of *Davis v. Georgia* (1976), 429 U.S. 122, 50 L. Ed. 2d 339, 97 S. Ct. 399, at his first sentencing hearing forever prevents the State from obtaining a death sentence. In the first *Szabo* opinion this court reversed defendant's death sentence in part because a prospective juror was improperly excluded from the jury. (*People v. Szabo* (1983), 94 Ill. 2d 327, 357.) The juror had expressed reservations about the death penalty but had not expressed a firm commitment against its imposition. In *Davis* the Supreme Court held that when such a person is excluded from the jury then "any subsequently imposed death penalty cannot stand." 429 U.S. 122, 123, 50 L. Ed. 2d 339, 341, 97 S. Ct. 399, 400.

Defendant argues that this language means that the improper exclusion of one juror entirely precludes a future death penalty. If this were so then imposition of the death penalty would indeed be plain error. However, we do not think that the Supreme Court meant to forever preclude the imposition of the death penalty because of a single error. In our view *Davis* requires that a new venire be drawn and a new death penalty hearing conducted. Since this is exactly what occurred in the instant case, *Davis* has not been violated.

Defendant also argues that his sentence is unconstitutionally disproportionate to the four-year juvenile sentence imposed upon his accomplice, Robert Leatherman. This court rejected this very argument in defendant's

first appeal (*People v. Szabo* (1983), 94 Ill. 2d 327, 352-53), and we see no reason to alter our previous holding.

Defendant also raises numerous objections to the constitutionality of the death penalty statute. However, this court has previously rejected each of these contentions. Defendant has not provided us with argument as to why we should reconsider these holdings but has instead referred us to the argument made in a defendant's brief in another case and the opinion of a Supreme Court justice dissenting from the denial of *certiorari* in still another case. We once again point out that this court will not consider an issue to be properly raised when defendant has made no argument other than to incorporate by reference the argument of another. (*People v. Perez* (1985), 108 Ill. 2d 70, 96-97.) At any rate, we decline the invitation to overrule our previous decisions.

For the reasons stated herein, the judgment of the circuit court of Will County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, November 18, 1986, as the date on which the sentence entered in the circuit court of Will County is to be carried out. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of the mandate of this court shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein defendant is confined.

*Judgment affirmed.*

CHIEF JUSTICE CLARK, dissenting:

A defendant in a death case should not be required to file a motion for a new trial as the majority holds.

The majority states:

"Defendant also raises several issues regarding his sec-

ond sentencing hearing. However, he filed no post-trial motion after this hearing, and therefore the State argues that any sentencing issues are waived. We agree. In a capital case the jury's determination whether the death penalty will be invoked is part of the 'trial.' Failure to raise trial errors in a post-trial motion, as required by section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 116—1), waives those errors." 113 Ill. 2d at 93.

The majority then explains that an exception to this rule is made when there is plain error, which is so substantial as to deprive the defendant of a fair trial. 113 Ill. 2d at 93-94.

I believe the above-quoted language from the majority opinion is in conflict with this court's opinion in *People v. Caballero* (1984), 102 Ill. 2d 23, wherein this court stated:

"Since this is a death penalty case, which under our constitution is automatically reviewed by this court (Ill. Const. 1970, art. VI, sec. 4(b)), we must review the case whether or not a written motion for a new trial has been filed. Otherwise, the constitutional provision for an automatic appeal would be meaningless." 102 Ill. 2d 23, 32.

In the instant case, the defendant filed a motion for a new trial after the original trial. This court then remanded the case to the circuit court for an *in camera* inspection of certain notes. After the inspection of the notes and the trial court's decision that the defendant was not entitled to a new trial, the defendant filed a second motion for a new trial. The second motion for a new trial was denied and a second sentencing hearing took place. To now hold that the defendant was required to file yet another motion for a new trial after his second sentencing hearing narrows the defendant's constitutional right to a direct appeal.

The relief the defendant would be requesting in the case at bar is a new sentencing hearing, not a new trial. Since the defendant knew that his second sentence of

death would automatically be reviewed on direct appeal, as is constitutionally mandated, it would not have been logical for him to have filed a third motion for a new trial when all he is seeking is a new sentencing hearing.

It should be noted that the constitutional provision providing for direct appeal to this court in death cases does not place any limitation on the scope of review. I believe the restriction which the majority is placing on the scope of review improperly narrows the defendant's constitutional right to a direct appeal. In *Woodson v. North Carolina* (1976), 428 U.S. 280, 305, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991, the United States Supreme Court stated:

> "This conclusion rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."

Because the United States Supreme Court has stated that a sentence of death is qualitatively different, I believe these cases should be treated differently under the waiver rule.

For all of the above-stated reasons, I respectfully dissent, and I would consider the several issues that are raised by defendant on appeal.

JUSTICE SIMON, also dissenting:

For the reasons set forth in Chief Justice Clark's dissenting opinion, as well as those expressed in my separate opinion in *People v. Caballero* (1984), 102 Ill. 2d 23, 52 (Simon, J., dissenting), I too believe that the majority is wrong in declaring that a post-trial motion is required in order to preserve issues for direct review in a capital

case. In fact, *Caballero* made clear that counsel's failure to file a motion for a new trial in a capital case, while perhaps inviting a tongue-lashing from this court, could not affect the court's review of the constitutionally mandated automatic appeal. That principle was only recently reaffirmed in *People v. Porter* (1986), 111 Ill. 2d 386. In *Porter*, the defendant raised two arguments on appeal concerning his right to trial by an impartial jury; only one of the two points had been included in his motion for a new trial. The court once again admonished trial counsel to comply with the post-trial motion statute; it held, though, that "death penalty cases such as this are automatically reviewed by this court under our constitution" (111 Ill. 2d 386, 399) and proceeded to address the merits of both arguments. I find it puzzling that the court, in disregard of the principle of *stare decisis*, now appears to overrule *Caballero* and *Porter* without even mentioning them. The cases which are cited by the majority are not in point: in both *People v. Precup* (1978), 73 Ill. 2d 7, and *People v. Wright* (1985), 111 Ill. 2d 128, the defendants did file motions for a new trial, but failed in their motions to raise the issues later relied upon; here, as in *Caballero*, no such motion was filed.

I suggest that the entire question of what post-trial motions, if any, are required in capital cases and under what circumstances the failure to file a post-trial motion constitutes a waiver of issues relied upon on appeal deserves and requires a careful reexamination by the court. That question could even stand reexamination in noncapital cases in view of the manner in which many opinions have strayed away from the clear rule announced by Justice Ryan in *People v. Black* (1972), 52 Ill. 2d 544, 551 ("Constitutional questions as well as others may be waived by the absence of prior objections *and* the failure to preserve the same for review" (emphasis added)), and by Justice Schaefer in *People v. Needham* (1961), 22 Ill.

2d 258, 259 ("No objection or motion to strike was made, however, *and* the point was not raised in defendant's written motion for a new trial. It has therefore been waived" (emphasis added)). That rule necessitates that counsel bring the error to the trial court's attention; I submit that requiring a second objection by a post-trial motion serves little purpose except to impose an unnecessary technicality on defendants.

I would add that the majority's holding that sentencing issues must be preserved in a motion for a new trial is not grounded in the statute which governs all aspects of capital sentencing in the trial court and on review; section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) does not provide for a post-trial motion in capital cases. Rather, the majority relies on the semantic argument that the sentencing hearing is a part of the trial. Even if this is so, the chief justice correctly points out that it makes no sense at all to require a defendant to ask for a new trial when his challenge relates to the sentence which was imposed.

Having concluded that the defendant's failure to file a motion for a new trial after the sentencing hearing precludes consideration of all but "plain" sentencing errors, the majority quickly dispatches the defendant's claim that he was deprived of his rights under the sixth amendment's confrontation clause. The majority upholds the death sentence but is somewhat obscure on whether the denial of confrontation in this instance was not error at all or whether it simply was not "substantial" enough to rise to the level of plain error. In either case, I disagree.

Hearsay transcripts of former testimony by several witnesses were introduced in aggravation at the defendant's sentencing hearing and helped to put him on death row. The State made no showing that the witnesses were unavailable to appear in person. The majority concedes that such a showing is generally a prerequisite under the

confrontation clause to the admission of this type of hearsay but suggests either that a demonstration of unavailability is never required at the sentencing hearing or at least that it is not required when the hearsay is deemed reliable.

As to the first alternative, the source of the majority's doubt about the need for a showing of unavailability at the sentencing hearing is apparently *Williams v. New York* (1949), 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079. *Williams* held that due process did not require any confrontation of declarants whose out-of-court statements were contained in a presentence report and were relied upon by the judge in passing sentence. That decision, which predated and obviously did not contemplate the present-day formal sentencing hearing in capital cases, has been robbed of continuing vitality by subsequent developments, including the court's recognition that the sentence of death is "qualitatively different" from other punishments. (*Woodson v. North Carolina* (1976), 428 U.S. 280, 305, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991.) "Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees." (*Estelle v. Smith* (1981), 451 U.S. 454, 463, 68 L. Ed. 2d 359, 369, 101 S. Ct. 1866, 1873 (vacating a death sentence because evidence was introduced at the penalty phase in violation of the defendant's fifth amendment privilege against self-incrimination and sixth amendment right to counsel).) The right to be confronted with adverse witnesses is a "fundamental requirement" of that character (*Chambers v. Mississippi* (1973), 410 U.S. 284, 295, 35 L. Ed. 2d 297, 309, 93 S. Ct. 1038, 1046), and the right therefore extends to the penalty phase of a capital case (*Proffitt v. Wainwright* (11th Cir. 1982), 685 F.2d 1227, *modified* (11th Cir. 1983), 706 F.2d 311). For these reasons a showing that witnesses are unavailable must pre-

cede the introduction of their hearsay statements at sentencing.

I would also add that the majority's apparent suggestion that the sentencing hearing is not a part of the trial for the purposes of the sixth amendment stands in striking contrast to its earlier conclusion that the hearing *is* a part of trial for purposes of the post-trial–motion requirement. I fail to understand how the majority can expect to have it both ways.

In addition, the reliability of the hearsay cannot, as the majority holds, serve as a substitute for the independent requirement of the confrontation clause that the witnesses be shown to be unavailable. *Ohio v. Roberts* makes unmistakably clear that the "Confrontation Clause operates in two *separate* ways to restrict the range of admissible hearsay" (emphasis added): the witnesses must be unavailable and the hearsay must be reliable. (*Ohio v. Roberts* (1980), 448 U.S. 56, 65, 65 L. Ed. 2d 597, 607, 100 S. Ct. 2531, 2539.) The two separate requirements serve two distinct goals: the necessity for a showing of unavailability reflects the "Framers' preference for face-to-face accusation," while the purpose of the reliability test is to assure "accuracy in the factfinding process." (448 U.S. 56, 65, 65 L. Ed. 2d 597, 607, 100 S. Ct. 2531, 2539.) Neither factor standing alone can satisfy the sixth amendment.

There can thus be little doubt that the defendant was erroneously denied his right to be confronted with the witnesses against him. This violation of the sixth amendment is clearly one which involves a "substantial" right. I would therefore vacate the death sentence and remand the cause for further proceedings.