THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM J. WELACHA, Defendant-Appellant.

First District (6th Division)   No. 1—87—1789

Opinion filed July 28, 1989.

Randolph N. Stone, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Judith C. Rice, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

The sole issue here is whether the defendant, William Welacha, was properly found guilty of child abduction under section 10—5(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(1)).

Except where the testimony was in conflict as noted in this opinion, the statement of facts reflects the uncontroverted testimony of the defendant and his witnesses.

On March 18, 1986, the defendant, who lives in Wisconsin, received a telephone call from his then five-year-old son, who lived in Riverdale, Illinois, with his mother, the defendant's ex-wife. The mother had been granted sole care, custody and education of the boy in the judgment for dissolution of marriage entered just over three years earlier in Cook County, Illinois. The defendant's visitation rights were not delineated in the judgment, nor in a subsequent court order, but the defendant and the boy's mother agreed between themselves to a visitation schedule. As indicated at the sentencing hearing, these visits included permitting the boy to visit his father in Wisconsin for his Easter vacation and during the summer.

In the telephone call, the boy indicated an urgent need to see his father and speak with him, telling him that his baby-sitter was screening his calls. That night the defendant, his present wife, and their children drove to Illinois, spending the night with the defendant's sister in Carol Stream, Illinois. The following morning, the defendant arrived at his ex-wife's house and asked to take the boy to breakfast. The child's mother agreed that defendant could take the child, but she asked him to return the boy by noon so that their son could attend his afternoon kindergarten class. The defendant took the boy to the Carol Stream house.

The record does not disclose that the defendant asked any questions of the boy to determine the cause of his "urgent" long-distance telephone call the night before. However, when the boy was told that it was time to return home, he became agitated and wet his pants. Upon questioning by defendant's wife, the boy told her that he did not want to return because of the way he was treated by his baby-sitters. He told her of an incident of sexual abuse by a previous baby-sitter, Ricky, and that his present baby-sitter, Irma pinched him on the arm and spanked him. The record does reflect that several months prior to the March 18, 1986, telephone call, and while the boy and his mother were living in a different town, the boy told his mother of the sexual abuse by Ricky and she immediately fired the baby-sitter.

The father reported the boy's complaint to the Illinois Depart-

ment of Children and Family Services (IDCFS). Testimony was conflicting as to when the report was made. An IDCFS investigator went to the defendant's sister's house and questioned the boy. In his IDCFS report, the investigator stated that after talking with the child he found sufficient evidence existed to warrant investigation into the allegation of sexual abuse. The investigator told the defendant that he should not return his son to the boy's mother. Although the investigator's report said that the boy would stay in Carol Stream until petition for change of custody was filed in divorce court, the defendant testified that he told the investigator that he and his family lived in Wisconsin and would return there after the paperwork was filed. The defendant testified that when he left for Wisconsin with the boy, it was with the knowledge of IDCFS and his attorney, but he admitted that it was without a court's permission.

At no time was the child hidden from his mother. Although there is a discrepancy as to exactly when the defendant contacted the boy's mother and as to what was said, there is no disagreement that within hours the defendant had contacted the boy's mother to inform her that he would not return the boy. The mother subsequently called the defendant's sister's house where the defendant, the boy, and defendant's family were staying. She testified that she went out to her sister-in-law's home and found no one there. Other calls were made between the defendant and the child's mother after the defendant, his family, and the boy returned to Wisconsin.

Shortly thereafter, the mother appeared in a Wisconsin court. She was informed that the Wisconsin Department of Children and Family Services (WDCFS) had custody of the boy and would not relinquish him to her. WDCFS returned the boy to the defendant. The record discloses that defendant attempted to enroll the child in school in Wisconsin. Some seven or eight weeks later the defendant returned to Du Page County, Illinois, for a hearing regarding child support payments and he was arrested and charged with child abduction. To free him his wife returned the boy to Illinois. IDCFS placed the boy with his maternal aunt until its investigation was completed. The Du Page County court subsequently returned the boy to the mother. Although the mother later indicated a desire to drop the charges, defendant was charged with child abduction. At a bench trial, he was convicted and sentenced to 30 months' probation. The defendant appeals.

Defendant was charged under section 10—5(b)(1) of the Criminal Code, which defines the crime of child abduction as an act by a per-

son who "[i]ntentionally violates any terms of a valid court order granting sole or joint custody, care or possession to another, by concealing or detaining the child or removing the child from the jurisdiction of the court." (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(1).) The defendant argues that he did not violate the custody decree because it does not prohibit him from taking the boy out of State.

The Criminal Code, section 10—5(b)(2), states a person commits child abduction when he or she "[i]ntentionally violates a court order prohibiting the person from concealing or detaining the child or removing the child from the jurisdiction of the court." Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(2).

The record is clear that the defendant was charged under section 10—5(b)(1) and not under section 10—5(b)(2) and that he was found guilty under section 10—5(b)(1) because he removed the boy from the jurisdiction of the court which entered the valid court order granting sole custody to the boy's mother.

Defendant argues as an affirmative defense to the charge that he was fleeing an incidence or pattern of domestic violence. (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(c)(3).) The State responds that because the defendant did not raise this affirmative defense at trial, or in the motion for a new trial, he cannot raise it on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274; *People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223, 227, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362; *People v. Szabo* (1986), 113 Ill. 2d 83, 93, 497 N.E.2d 995, 999, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330, *rehearing denied* (1987), 481 U.S. 1025, 95 L. Ed. 2d 520, 107 S. Ct. 1915.) We agree.

The State argues that the prosecution did not raise the issue of domestic violence in the case in chief and that defendant waived opening argument and did not specifically state that he was raising an affirmative defense at trial. Defendant presented a written motion for new trial in which no mention of an affirmative defense was made. Defendant responds that although not specifically raised as an affirmative defense, the evidence established that the reason he took the child to Wisconsin was that he was fleeing an incidence or pattern of domestic violence.

In reply, the State argues that if this court finds the affirmative defense of fleeing an incidence of domestic violence was raised at trial, the evidence was clearly insufficient to support such defense. Defendant testified the child told him that his current baby-sitter

spanked and pinched him and that his former baby-sitter, Ricky, had made him perform oral sex but that this incident had occurred several months prior to the March 18, 1986, phone call to defendant.

■ The record in this case established that upon learning of the sexual abuse of the boy his mother immediately fired the accused baby-sitter. The evidence of spanking and pinching by Irma, the baby-sitter caring for the child in March 1986, was not found by the trial court to constitute domestic violence. In fact the record disclosed that IDCFS investigator Jack Strand found that this case appeared to be more a possible neglect case than an abuse case. Therefore, even if the defendant's attempt to offer the affirmative defense that when he took the child he was fleeing an incidence of domestic violence is found by this court to have been raised at trial and therefore preserved for review on appeal, it is clear the trial court found the evidence insufficient to overcome its finding of defendant's guilt.

The defendant also argues that the evidence at trial was not sufficient to establish that he had the requisite intent to commit child abduction. In finding the defendant guilty of child abduction, the trial judge stated that he did not "believe half of the things that" the defendant said in his testimony nor did he believe the testimony of the defendant's wife. The trial court specifically found the defendant intentionally violated the law and intended to keep the child in Wisconsin in violation of the custody order.

■ This case thus turns on the credibility of the witnesses. Credibility of witnesses is determined by the trier of fact (*People v. Byrd* (1961), 21 Ill. 2d 114, 117, 171 N.E.2d 782, 783-84; *People v. Richardson* (1971), 132 Ill. App. 2d 712, 714, 270 N.E.2d 568, 570), and in a bench trial, this determination is reserved for the trial judge. *People v. Byrd* (1961), 21 Ill. 2d 114, 171 N.E.2d 782; *People v. Tillis* (1976), 40 Ill. App. 3d 66, 68, 351 N.E.2d 332, 334.

■ The trial court has a unique opportunity to observe the demeanor of the witnesses, assess their credibility, and determine any motivational factors bearing on truthfulness. (*People v. Kradenych* (1980), 83 Ill. App. 3d 547, 552, 404 N.E.2d 488, 493.) Because the reviewing court does not have the same opportunity, it should not substitute its judgment for that of the lower court unless this determination is "so unsatisfactory, improbable, or implausible as to justify a reasonable doubt as to defendant's guilt." (*Kradenych*, 83 Ill. App. 3d at 552, citing *Tillis*, 40 Ill. App. 3d at 68-69.) We find no basis here for disturbing the trial court's determinations as to witness credibility.

Whether the IDCFS had the authority to instruct defendant not

to return the child to his mother contrary to the divorce judgment giving sole custody to the mother is not raised in this appeal.

For all of these reasons, the decision of the court below is affirmed.

Judgment affirmed.

EGAN, P.J., and McNAMARA, J., concur.