THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARY L. JONES, Defendant-Appellant.

Fifth District    No. 5—94—0603

Opinion filed September 5, 1996.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Darrell Williamson, State's Attorney, of Chester (Norbert J. Goetten, Stephen E. Norris, and J. Stephen Bennett, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant Mary L. Jones appeals from her conviction and sentence for the first-degree murder of her two-month-old son. She raises two issues on appeal: (1) whether her conviction must be reversed and the cause remanded for a new trial because the trial court did not conduct a hearing to determine defendant's fitness to stand trial upon learning that she had been administered psychotropic medications while in jail awaiting trial; and (2) whether her conviction must be reversed and the cause remanded for a new trial because the cause proceeded to a bench trial without defendant's having executed a written jury waiver. Because we find the first issue to be dispositive of defendant's appeal, we will not address the second issue relating to the need for a written jury waiver. For reasons which follow, we reverse defendant's conviction and sentence and remand this cause for a new trial.

Defendant was charged by information filed in the circuit court of Randolph County on March 8, 1994, with the first-degree murder of her two-month-old son. She was arrested and remained in jail pending trial.

On April 4, 1994, the trial court granted defendant's request to appoint Daniel J. Cuneo, a licensed psychologist, as an expert witness to assist in her defense. On June 17, 1994, Dr. Cuneo testified in support of defendant's motion to suppress her confession. During his testimony, Cuneo mentioned that defendant had been administered, by the staff of the Randolph County jail while she was incarcerated awaiting trial, the drugs Lorazepam, "a light tranquilizer" to reduce her agitation, and Dilantin, "to control her seizures." He also testified that defendant suffers from a personality disorder and that she has twice attempted suicide, most recently while incarcerated in the Randolph County jail awaiting trial on this case. She also suffers from transitory auditory hallucinations, in which she hears her father's voice speaking reassuringly to her. Defendant also has a very low I.Q. Cuneo was never asked about and never expressed an opinion on defendant's fitness to stand trial.

Following a bench trial held from July 11 to July 15, 1994, defendant was found guilty of first-degree murder and sentenced to 35 years in the Department of Corrections.

Defendant argues that she is entitled to a new trial because the trial court failed to hold a hearing on the issue of her fitness to stand

trial, after learning that she had been receiving psychotropic medications shortly before trial. She argues that such a hearing is required by section 104—21(a) of the Code of Criminal Procedure of 1963. 725 ILCS 5/104—21(a) (West 1992). At the time of defendant's trial, that section provided in pertinent part that a "defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1992).

This statutory provision, and the issue presented in this appeal, have been the subject of numerous recent Illinois Supreme Court opinions. Three subissues are presented in this appeal and were discussed in these supreme court cases: whether the issue can be waived; the need for a fitness hearing; and the appropriate remedy for the error.

In *People v. Brandon*, 162 Ill. 2d 450 (1994), defendant had been taking psychotropic medications under medical direction prior to and during his trial and sentencing. Nevertheless, his counsel failed to request a fitness hearing pursuant to section 104—21(a). Respecting the issue of waiver, our supreme court stated:

> "Section 104—21(a) [citation] evinces a recognition by the General Assembly that psychotropic medication is an important signal that a defendant may not be competent to stand trial. If a defendant on such medication is not fit to stand trial, he can scarcely be expected to raise the question of fitness in the first instance. Where a defendant's capacity is the issue in question, it is anomalous to even consider concepts of waiver." *Brandon*, 162 Ill. 2d at 457.

Respecting the question of the need for a hearing, the court held:

> "A trial court may have no obligation to conduct a fitness hearing *sua sponte* where it does not know that a defendant is on medication, no request for a hearing is made until after trial, and there has been no indication to the trial court that the defendant might be unfit. Where, however, a proper request for a fitness hearing is made by a defendant who is receiving psychotropic or other medications under medical direction, the statute expressly provides that he is 'entitled' to receive one." *Brandon*, 162 Ill. 2d at 459.

The court held that once section 104—21(a) is invoked, whether to hold a fitness hearing is not discretionary with the court and the court must hold such a hearing. *Brandon*, 162 Ill. 2d at 461. In *Brandon*, the court found that the proper remedy for the denial of defendant's right to a fitness hearing was to reverse his conviction and remand the matter for a new trial.

In *People v. Gevas*, 166 Ill. 2d 461 (1995), our supreme court again discussed section 104—21(a). In that case the defendant pleaded guilty

to the murder of his two nine-month-old children and was sentenced to death. His counsel filed a motion asking the court to vacate the guilty plea and to hold a fitness hearing based on evidence that defendant had been treated with psychotropic drugs during the proceedings. The motion was denied. Accordingly, the issue of waiver was not presented to the supreme court.

The supreme court held that the fact that the trial court had been informed of defendant's treatment with psychotropic drugs during the proceedings but refused to investigate further by holding a fitness hearing warranted a reversal of defendant's convictions and sentence. *Gevas*, 166 Ill. 2d at 467-68. The court recognized that while it was not clear from the record whether defendant had been taking psychotropic drugs on the dates he pleaded guilty and was sentenced, there was evidence that he had been taking such drugs two months prior to his plea and sentencing, which was proximate enough in time to the dates of his plea and sentencing to have imposed a duty on the trial court to further investigate defendant's fitness to stand trial, at least where there was no evidence that administration of the medication had been stopped prior to his plea and sentencing. *Gevas*, 166 Ill. 2d at 469. The supreme court pointed out, "The legislature has equated the administering of psychotropic medication to a defendant with a *bona fide* doubt as to fitness to stand trial." *Gevas*, 166 Ill. 2d at 469. The court pointed out that not only does the administering of these drugs signal that a defendant may not be competent to stand trial, but these drugs also have severe side effects which can affect a defendant during criminal proceedings. *Gevas*, 166 Ill. 2d at 470.

Finally, the supreme court held that, because more than two years had passed since the trial court denied defendant's request for a fitness hearing, it would be impossible to conduct a meaningful hearing as to defendant's fitness at the time of his guilty plea and sentencing. Accordingly, the court reversed defendant's conviction and sentence and remanded the cause for a new trial.

In *People v. Kinkead*, 168 Ill. 2d 394 (1995), our supreme court again addressed section 104—21(a) of the Code of Criminal Procedure of 1963. In *Kinkead*, defendant did not request a fitness hearing pursuant to section 104—21(a), but the trial court was aware that defendant had been taking a psychotropic medication. No fitness hearing was held.

The supreme court held that trial counsel's failure to pursue defendant's right to request a competency hearing pursuant to section 104—21(a) does not waive the issue, and where the record indicates that a defendant's use of psychotropic medication was

proximate to the time of his trial, the trial court has a duty to further investigate the defendant's fitness for trial. *Kinkead*, 168 Ill. 2d at 406-07. Accordingly, the supreme court held that the defendant had not waived the issue of his right to a competency hearing under section 104—21(a). *Kinkead*, 168 Ill. 2d at 407.

The supreme court went on to reiterate that where section 104—21(a) applies, a fitness hearing is mandatory, not subject to the trial court's discretion, and that defense counsel's failure to move for such a hearing, where applicable, constitutes ineffective assistance. The court pointed out:

> "Psychotropic medications are potent drugs and their effect on the mind and behavior of an accused may not be easily determined or fully understood, particularly by nonmedical personnel. A fitness hearing provides the vehicle by which the court may ascertain whether the drugs are influencing the defendant's subjective decision regarding the pursuit of available defenses." *Kinkead*, 168 Ill. 2d at 410.

The court stated, "Recent precedent of this court has construed section 104—21(a) as conferring upon defendants, as a matter of entitlement, the right to a mental competency hearing if they are being given psychotropic drugs under medical supervision during the time of their prosecution or sentencing." *Kinkead*, 168 Ill. 2d at 397. The supreme court held that, if a trial court has notice that a defendant is taking psychotropic medications or when counsel requests a fitness hearing based on section 104—21(a), the court has a duty to inquire into the matter and hold a hearing to ascertain whether the use of such medications has rendered defendant unfit to assist in his defense.

In *Kinkead*, the record revealed that defendant was being treated with a psychotropic drug while he was in jail awaiting trial, but the record contained very little additional information regarding the time periods and other circumstances under which the drug was administered to defendant. In *Kinkead*, unlike in *Brandon* and *Gevas*, the supreme court did not remand the cause for a new trial but remanded for the limited purpose of the clarification of the circumstances surrounding defendant's use of psychotropic medications. The court found that, unlike the situation presented in *Brandon* and *Gevas*, it did not have an adequate record upon which to evaluate whether defendant's receipt of psychotropic drugs while in jail was medically significant. There was insufficient evidence in the record from which to determine whether the administration of the drugs was proximate enough in time to defendant's guilty plea and sentence to trigger the right to a full fitness hearing pursuant to section 104—

21(a). The court could not ascertain from the record when defendant began to take the medication, what amount had been prescribed, for what medical reasons it had been prescribed for him, or in what manner the drug might have influenced defendant's mental functioning, mood, and demeanor in the courtroom. Accordingly, the cause was remanded to the circuit court for further proceedings in which the facts relevant to defendant's usage of psychotropic medication could be developed.

Under the exercise of its supervisory power, the supreme court retained jurisdiction over the appeal but remanded the cause to the circuit court with instructions that it conduct an inquiry into the factual circumstances surrounding defendant's asserted use of psychotropic medication while in prison, including specifically the dates on which he received and ingested such medicine and whether the psychotropic drug treatment was linked closely enough to the time of defendant's plea of guilty and sentencing to have entitled him to a competency hearing pursuant to section 104—21(a). The circuit court was to report back to the supreme court with its findings.

Most recently in *People v. Nitz*, 173 Ill. 2d 151 (1996), and *People v. Birdsall*, 172 Ill. 2d 464 (1996), the supreme court reiterated that the issue of the right to a fitness hearing under section 104—21(a) cannot be waived and that the administration of psychotropic drugs to a defendant raises a *bona fide* doubt of his fitness to stand trial. In *Nitz*, defendant was administered a psychotropic drug before and during his trial. In *Birdsall*, the record indicates that defendant was taking a psychotropic medication before and during his trial. Accordingly, the matters were remanded for a new trial. In *Nitz* and *Birdsall*, as in *Brandon* and *Gevas*, the supreme court reversed defendants' convictions and remanded for new trials, rather than remanding the causes for retrospective fitness hearings, because of the impracticability of a meaningful hearing, retrospectively, on the issue of defendants' fitness at the time of trial.

We turn now to the case at bar. We reject, without further discussion, the State's argument that we should disregard these supreme court opinions. We find that the supreme court has quite clearly expressed itself regarding the meaning and application of section 104—21(a), and we are bound to follow its pronouncements.

■ Although defendant failed to request a fitness hearing before the trial court and failed to raise as error in her posttrial motion the failure to provide her with such a hearing, the State does not argue that defendant has waived the issue for purposes of review. Under the supreme court cases discussed above, we find that defendant could not waive and has not waived the issue of the denial of a fitness

hearing pursuant to section 104—21(a) of the Code of Criminal Procedure of 1963.

The State argues that the case at bar is distinguishable from, and not controlled by, the above-cited supreme court cases because "the record in the case *sub judice* does not reveal that defendant was receiving any medication that raises a *bona fide* doubt of defendant's fitness to stand trial." However, as the supreme court has made clear in its rulings, the legislature has equated the administration of psychotropic medications with a *bona fide* doubt of a defendant's fitness to stand trial.

The State next argues that in the case at bar defendant was not taking antipsychotic medications like those taken by the defendants in *Brandon*, *Gevas*, and *Kinkead* but was taking only Lorazepam, a light tranquilizer, and Dilantin, an antiseizure medication. Again, section 104—21(a) refers to psychotropic medications, not antipsychotic medications. The State concedes that "arguably Lorazepam could be considered a psychotropic medication."

While section 104—21(a) does not define the term "psychotropic medication," some guidance can be found in other sources. In *In re C.E.*, 161 Ill. 2d 200, 214 (1994), our supreme court described psychotropic drugs as "mood altering." The Mental Health and Developmental Disabilities Code defines psychotropic medication as:

> "medication whose use for antipsychotic, antidepressant, antimanic, antianxiety, behavioral modification or behavioral management purposes is listed in AMA Drug Evaluations, latest edition, or Physician's Desk Reference, latest edition, or which are administered for any of these purposes." 405 ILCS 5/1—121.1 (West 1994).

Lorazepam is listed in the latest edition of the Physician's Desk Reference as an antianxiety agent which has a tranquilizing action on the central nervous system. Physician's Desk Reference 2646 (49th ed. 1995). Finally, Lorazepam is explicitly listed as a psychotropic drug in the regulations of the Department of Mental Health and Developmental Disabilities. 59 Ill. Adm. Code § 112.80(c)(2) (1996).

We conclude that Lorazepam is a psychotropic medication within the meaning of section 104—21(a) and that, upon learning that defendant was being administered this medication, the trial court had a duty to further investigate defendant's fitness to stand trial. The trial court's failure to afford defendant the hearing to which she was entitled by section 104—21(a) requires that we reverse defendant's conviction and remand this cause to the trial court for further proceedings.

We come then to the question of what remedy is appropriate.

The State argues that we should remand this cause only for a limited hearing as in *Kinkead*. We do not agree. In *Kinkead* there was no evidence as to the time period during which defendant was administered the medication or whether it was proximate enough in time to defendant's guilty plea and sentence to trigger the right to a full fitness hearing pursuant to section 104—21(a). The case at bar is more similar to *Gevas*, wherein the court held that taking the medication two months prior to the plea and sentencing was proximate enough in time to require the court to conduct a fitness hearing. In the case at bar, the evidence indicates that at least three weeks prior to her trial defendant was taking a psychotropic medication. This is more proximate in time to defendant's trial than was the case in *Gevas*.

Furthermore, as in *Gevas*, *Nitz*, and *Birdsall*, we find that it would be impossible at this late date to conduct a meaningful hearing as to defendant's fitness at the time of her trial. Accordingly, we remand this cause for a new trial.

We are cognizant of the costs and burdens which must be borne by our criminal justice system as a result of our disposition. However, we are bound to follow the decisions of the supreme court, and we do so here.

We note that defendant has not challenged the sufficiency of the evidence to prove her guilt, and we observe that the evidence in the record is sufficient to support her conviction and sentence. Consequently, there is no double jeopardy impediment to a new trial. See *People v. Birdsall*, 172 Ill. 2d 464 (1996).

For the foregoing reasons, the judgment of the circuit court of Randolph County is reversed, and this cause is remanded to that court for a new trial.

Reversed and remanded.

KUEHN and CHAPMAN, JJ., concur.