THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARY JONES, Defendant-Appellant.

Fifth District   No. 5—97—1090

Opinion filed January 19, 2000.

GOLDENHERSH, P.J., specially concurring.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Darrell Williamson, State's Attorney, of Chester (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

In July of 1994, defendant waived a jury and went to trial on mur-

der charges in Randolph County before the Honorable Judge Jerry D. Flynn. After a two-day trial at which both sides presented evidence, Judge Flynn found defendant guilty of first-degree murder in the suffocation death of her infant child. Thereafter, he sentenced her to a 35-year prison term.

Defendant appealed that conviction. Among the issues raised on her appeal was an issue of whether a competency hearing was required due to defendant's use of psychotropic medication during the trial. At the time of defendant's initial appeal, the only remedy for the trial and conviction of a medicated defendant in the absence of a prior fitness hearing was to vacate the conviction and start over. Thus, we granted defendant a new trial. See *People v. Jones*, 291 Ill. App. 3d 231, 684 N.E.2d 772 (1996).

On remand, she again appeared in a Randolph County courtroom for trial on her plea of not guilty. The singular proceedings that followed form the basis of the present appeal.

Defendant again shunned a jury and proceeded to a bench trial. While such a decision might appear somewhat questionable given how a judge had already ruled, it was not what set the trial apart from other trials. The defense wanted the judge to decide guilt or innocence by use of the exact same evidence that guided Judge Flynn's earlier decision. This design was effectuated by the prosecution's tender of a transcript from the prior trial and defense counsel's stipulation to its admission into evidence. Thus, trial's outcome depended upon a second judicial determination based upon the identical defense that Judge Flynn had already rejected. Defendant sought to have a judge acquit where a judge had already convicted.

While the trial's unusual design set it apart from other trials, it is still not what made the proceedings truly unique. Defendant chose to pursue this course in the courtroom of and while standing before the Honorable Jerry D. Flynn.

Judge Flynn could not help but note the obvious. He candidly observed before he again decided the question of defendant's guilt or innocence that he was predisposed to find her guilty just as he did before. After he warned defendant of trial's inevitable outcome if a decision was left to him, and defendant acknowledged her understanding of that fact, Judge Flynn found defendant guilty of first-degree murder and sentenced her to a 35-year prison term.

There is one other thing that adds to the remarkable nature of these proceedings. There was a lawyer present who assisted defendant in this course of action.

These events raise two questions. The first is whether the proceedings meet the fundamental structural due process requirement to trial

before an unbiased judge. See *Tumey v. Ohio*, 273 U.S. 510, 532, 71 L. Ed. 749, 758, 47 S. Ct. 437, 444 (1927). The second is whether counsel's performance was constitutionally deficient. See *United States v. Cronic*, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047 (1984). We decide the case on the latter question.

This was not a guilty plea even though defendant's surrender to a forewarned outcome resembled such a plea. Defendant did not forego the rights afforded her under a plea of not guilty. This was a trial, albeit an expedited one.

The State defends it. It argues that it constituted a fair trial wherein the judge was free to decide guilt or innocence based upon stipulated evidence taken at the first trial.

The State also defends counsel. It points out that stipulated bench trials are routinely used as sound strategic tools by criminal defense attorneys. While this is certainly true, it serves only to raise the paramount question that abounds. How did counsel strategically employ a stipulated bench trial to assist his client in this case? He proceeded without concession from the State in return for the stipulation. Moreover, he did not file a posttrial motion, a step he surely would have taken if his purpose was to preserve error from the first trial for appellate review. The errors that might have occurred at the first trial now lay forfeit to counsel's inaction. See *People v. Enoch*, 122 Ill. 2d 176, 185-86, 522 N.E.2d 1124, 1129 (1988); *People v. Szabo*, 113 Ill. 2d 83, 93, 497 N.E.2d 995, 999 (1986).

■ The Supreme Court has instructed as follows:

"Unless the accused receives the effective assistance of counsel, 'a serious risk of injustice infects the trial itself.' [Citation.]

Thus, the adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.' [Citation.] The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." *Cronic*, 466 U.S. at 656-57, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045-46.

■ Here, the trial process failed to resemble a confrontation between adversaries. Surely counsel knew what was going to happen when he pursued the course taken. The same judge who previously convicted his client of first-degree murder was asked to decide the case again based upon the same evidence. If any suspense as to outcome

existed, the trial judge's candor about his own predisposition to convict ended it. We can perceive of no apparent purpose in the decision to proceed in the manner employed other than to ease the prosecution's task and to expedite conviction.

The State addresses our concern by noting that defendant's first attorney put the prosecution's case to a meaningful adversarial test. With this, we wholeheartedly agree. A review of the original proceedings reveals that defendant's first attorney handled her defense in a highly competent fashion and presented a legitimate question as to the degree of defendant's guilt. Defendant's first attorney made a plausible plea for a verdict of involuntary manslaughter.

The State draws upon defendant's original defense to argue that counsel in these proceedings did not surrender an adversarial role. The State contends, "If counsel reasonably deemed that the first trial contained all of the evidence necessary to adequately present the defendant's case, then his election to speak no further cannot be considered an abdication of his role as an advocate of the defendant." With this, we cannot agree.

Although the original defense and its test of the State's case was quite competent, it was clearly unsuccessful. Judge Flynn was unpersuaded by the effort.

If defense counsel "reasonably deemed that the first trial contained all of the evidence to adequately present the defendant's case" and elected to speak no further for that reason, his conduct was truly egregious. If he believed that the transcripts presented an adequate defense, he needed to present that defense to someone other than a judge who he knew was predisposed to rule it out.

This defendant was granted a rare and fortuitous opportunity. The state of the law when she presented her first appeal allowed her to escape Judge Flynn's original judgment. She was granted the chance to present her defense to a different trier of fact—one that might have viewed the evidence differently. She was also granted the chance to obtain a different judge's view of appropriate punishment. This opportunity afforded itself without risk of any punishment more severe than 35 years. But defense counsel failed to seize upon defendant's good fortune. As far as we can see, he simply cast it to the wind.

We are at a loss to find the advocacy in counsel's work. The only conceivable strategy we can attribute is hardly a sound one. If the plan was to ease the State's path to conviction in order to win favor from Judge Flynn at resentencing, counsel either did not hear or chose not to take heed of Judge Flynn's admonitions. Judge Flynn rattled several warnings of the poison that lay in store for defendant if she persisted in the course taken. Although he advised that he would

order a new presentence report, he clearly pointed out that the new report was not likely to contain the kind of changes that would alter his view of punishment. Moreover, if such an ill-conceived tactic ever existed, a review of the subsequent sentencing hearing reveals that not one word was said to pursue it.

After defendant's original trial ended, Judge Flynn set forth the reasons for his decision in great detail. At the original sentencing hearing, he articulated in similar fashion why he thought a 35-year prison term was justified. Counsel had only to read the transcript of these proceedings to gain an understanding that his pursuit of an expedited trial before Judge Flynn would spell certain doom for his client. A judge who articulates in great detail his carefully considered reasons for a given punishment rarely changes his mind by later defying his own wisdom.

Defense counsel went forward upon defendant's plea of not guilty in a way that assured the inevitable result reached. Defendant received nothing in return for her surrender to certain conviction. In fact, she lost all of the issues preserved for review during her original trial.

We believe that the constitution calls for more from trained professionals engaged in the adversarial system of justice than mere capitulation. Lawyers are supposed to use their skills in an effort to do something helpful for their clients. The only person assisted in these proceedings was the prosecutor who reclaimed an earlier hard-fought conviction without concession and, more importantly, without any kind of defense.

Because defendant was not afforded effective assistance of counsel, we reverse and remand for a new trial.

Reversed and remanded.

CHAPMAN, J., concurs.

PRESIDING JUSTICE GOLDENHERSH, specially concurring:

While I agree with the ultimate result of the majority, reversal and remand, my reasoning is different from that of my colleagues. In my view, the question posed by the instant appeal concerns the fundamental difference between a stipulated bench trial and a plea of guilty. My conclusion is that while the proceedings in this case were labeled by all of the participants as a stipulated bench trial, the essence of the proceeding was, in effect, a plea of guilty without necessary admonitions for a plea. While hybrids are legitimate in agriculture, they can cause chaos in a judicial system.

The rule in Illinois is that a stipulated bench trial is not

tantamount to a guilty plea if the defendant presented and *preserved* a defense. See *People v. Horton*, 143 Ill. 2d 11, 20, 570 N.E.2d 320, 324 (1991). A stipulated bench trial is normally used to evade waiver of issues inherent in a guilty plea. See *Horton*, 143 Ill. 2d at 22, 570 N.E.2d at 325; *People v. Leckner*, 149 Ill. App. 3d 314, 318, 500 N.E.2d 721, 723 (1986). A guilty plea waives all nonjurisdictional defects or defenses. See *People v. Jackson*, 47 Ill. 2d 344, 348, 265 N.E.2d 622, 624 (1970).

In the instant case, defendant moved during the first trial to suppress her statements. The trial court denied defendant's motion. Also during the first trial, defense counsel cross-examined the State's witnesses, presented the testimony of Dr. Cuneo, and unsuccessfully argued that defendant was at worst guilty of involuntary manslaughter. Thus, at a minimum, after the first trial, defendant had viable arguments for review concerning both the admissibility of her three statements made to police and the sufficiency of the evidence against her to support a verdict of first-degree murder. However, those issues were not addressed in our first review of this matter, except to the extent that we noted, for purposes of double jeopardy, that it appeared the evidence was sufficient to support the verdict. Instead, our review concentrated only upon the trial court's failure to conduct a fitness hearing after learning that defendant was taking psychotropic medication. After we reversed and remanded for a new trial, defendant offered neither any new evidence nor any additional arguments. The trial court candidly told defendant that, without more, her guilt was but a foregone conclusion. After judgment was entered, defendant failed to file a posttrial motion.

Section 116—1(b) of the Code of Criminal Procedure of 1963 mandates that a defendant file a posttrial motion in order to preserve issues for appeal. 725 ILCS 5/116—1(b) (West 1996). A written posttrial motion is mandatory to preserve issues for appeal after either a jury trial or a bench trial. See *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). The purpose of a posttrial motion is: (1) to alert the trial court to trial errors and (2) to limit the issues reviewable on appeal that otherwise would be unduly burdensome and open-ended. See *People v. Johnson*, 214 Ill. App. 3d 1087, 574 N.E.2d 225 (1991).

Here, defendant failed to file a posttrial motion after the stipulated bench trial; thus, any factual or legal issues resulting from the first trial were not properly preserved for appeal. Accordingly, since a defense was not preserved, the stipulated bench trial was tantamount to a guilty plea. See *Horton*, 143 Ill. 2d 11, 570 N.E.2d 320. When a stipulated bench trial is tantamount to a guilty plea, the trial court must admonish the defendant of the consequences of her actions as

though the proceeding were formally that of a guilty plea. See *People v. Stepheny*, 56 Ill. 2d 237, 306 N.E.2d 872 (1974).

I have reviewed the transcript of the proceedings in which defendant agreed to the stipulated bench trial and, while the trial court attempted to ensure that the process was knowing and voluntary, I cannot say that defendant was properly admonished pursuant to Supreme Court Rule 402. For example, the trial court failed to tell defendant she was giving up her right to a jury trial if she proceeded in this manner. The instant case presents a unique factual basis. A borderline mentally retarded woman with a 75 IQ, who suffers clinical depression and has auditory hallucinations, was charged with and convicted of the first-degree murder of her infant son. While we previously decided, for purposes of double jeopardy, that the evidence at the first trial supported a finding of guilt on the charge of first-degree murder, another trier of fact could determine that defendant did not have the requisite state of mind to support a conviction for first-degree murder and find instead that defendant is guilty of involuntary manslaughter. After a thorough review of the record, I agree with defendant that what transpired after remand was not a stipulated bench trial but, rather, a guilty plea in which defendant's valid defenses were not preserved. Accordingly, defendant was entitled to full Rule 402 admonitions. Since the participants were operating under the assumption that the proceeding was a stipulated bench trial, those admonitions were not given.

On this basis, I agree with my colleagues that a reversal and remand is in order for the purpose of having a proceeding that fits into one of several clear categories: either a trial (bench or jury), a stipulated bench trial with effective preservation of claimed errors, or a guilty plea with appropriate admonitions to defendant. I therefore agree with the ultimate disposition of the majority—reversal and remand for further and appropriate proceedings, but I consider that we need not reach the issues upon which my colleagues base their decision.