# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-1800

JOHN SZABO,

Petitioner-Appellee,

v.

JONATHAN R. WALLS, Warden, Menard
Correctional Center,†

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3580—**John W. Darrah**, Judge.

_____

ARGUED AUGUST 2, 2002—DECIDED DECEMBER 10, 2002

_____

Before EASTERBROOK, RIPPLE, and MANION, Circuit
Judges.

_____

† Szabo's petition named as respondent the Director of the Illinois
Department of Corrections. We have amended the caption to
identify the proper respondent: the warden of the prison where
Szabo is confined. See Hogan v. Hanks, 97 F.3d 189 (7th Cir.
1996); Rule 2(a) of the Rules Governing Section 2254 Cases in the
United States District Courts. The caption has been further mod-
ified in light of Circuit Rule 12(b): "Actions seeking habeas corpus
shall be designated 'Petitioner v. Custodian' and not 'United
States ex rel. Petitioner v. Custodian.'"

EASTERBROOK, *Circuit Judge*.    After agreeing to sell
marijuana to two customers, John Szabo appeared at the
site appointed for the exchange with a knife, a gun, and a
henchman, but no marijuana. He stole the $700 that the
customers had brought and murdered both of them to avert
any risk that they would identify him. Szabo has been
sentenced to death for these planned killings. The first cap-
ital sentence was reversed by the Supreme Court of Illinois
because of errors in the hearing, see *People v. Szabo*, 94 Ill.
2d 327, 447 N.E.2d 193 (1983) (*Szabo I*), but the second was
affirmed. See *People v. Szabo*, 113 Ill. 2d 83, 497 N.E.2d 995
(1986) (*Szabo II*). Two efforts to obtain collateral relief in
the state courts were unavailing. See *People v. Szabo*, 144
Ill. 2d 525, 582 N.E.2d 173 (1991) (*Szabo III*); *People v.
Szabo*, 186 Ill. 2d 19, 708 N.E.2d 1096 (1998) (*Szabo IV*).
But in this proceeding under 28 U.S.C. §2254 the district
court issued a writ of habeas corpus after concluding that
Szabo's lawyer at his second sentencing had rendered in-
effective assistance by failing to call prison guards as wit-
nesses to inform the jurors of Szabo's good conduct in prison
between 1979 (when he was convicted) and 1984 (when the
resentencing occurred). See *Szabo v. Snyder*, 2002 U.S.
Dist. LEXIS 4964 (N.D. Ill. Mar. 21, 2002), relying on *Hall
v. Washington*, 106 F.3d 742, 749 (7th Cir. 1991), and *Kubat
v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989). The state's
only argument on appeal is that the ineffective-assistance
claim was forfeited in the course of Szabo's initial collateral
attack—as the Supreme Court of Illinois held in *Szabo IV*.
By negative implication the state concedes that *if* the claim
has been preserved, then Szabo is entitled to a third sen-
tencing hearing. We shall do likewise and ask only whether
the claim remains open to decision.

In *Szabo III* Szabo raised, but did not develop, an inef-
fective-assistance claim. His petition for collateral relief,
filed *pro se*, challenged the adequacy of counsel's work in
the second sentencing hearing. The state judge appointed

a lawyer to represent him, but that lawyer neither added to the claims made in the *pro se* petition nor produced affidavits to back them up. Because the record did not reveal what testimony the guards would have given, had they been called at the resentencing, the judge concluded that Szabo had not established any constitutional violation. On appeal in *Szabo III* his new lawyer did not contest this conclusion; instead he contended that, as a matter of state law, Szabo should be entitled to another hearing with better post-conviction counsel who would supplement his *pro se* pleadings and secure the essential affidavits from the guards. The Supreme Court of Illinois rejected that position.†† Szabo then filed a second state collateral attack, which was dismissed as barred by the adverse outcome of the first.

Under Illinois law a prisoner is entitled to only one collateral attack unless that proceeding is so defective because of *judicial* shortcomings that justice requires a second opportunity. See, e.g., *People v. Flores*, 153 Ill. 2d 264, 273-74, 606 N.E.2d 1078, 1083 (1992). Deficiencies attributable to errors and neglects of the petitioner's lawyer do not justify a second opportunity. *Id.* at 153 Ill. 2d 276, 606 N.E.2d 1084. In *Szabo IV* the Supreme Court of Illinois held that

---

†† Szabo relied on Ill. S. Ct. R. 651(c), the pertinent portion of which provides: "The record [on appeal on a collateral attack] shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional right, has examined the record of proceedings at the trial, and has made any amendments to the petitions filed pro se that are necessary for an adequate presentation of petitioner's contentions." *Szabo III* held that counsel complied with this requirement by stating that he had examined Szabo's *pro se* filings and saw no need to augment them, and that the lack of a formal certificate to this effect was harmless error.

Szabo's failure to develop an ineffective-assistance claim in *Szabo III* was the fault of his lawyer; the state's judicial system had offered an opportunity, which counsel had not used. Consequently, *Szabo IV* held, the state's forfeiture rules blocked Szabo's effort to make a better ineffective-assistance claim in a new proceeding.

Relying on the holding of *Szabo IV*, the state argued that Szabo's sixth-amendment claim was forfeited during the collateral attack that culminated in *Szabo III*. All the district judge said in response is:

> Petitioner's principal ground for relief . . . is properly before this Court. The fact that some of the claims were not raised in all four appeals to the Illinois Supreme Court does not mean that the claims are procedurally defaulted.

Yet the state had not argued that a prisoner must make an ineffective-assistance claim in *every* appeal. Neither the Attorney General (representing Illinois) nor the state's highest court faulted Szabo for omitting this contention in *Szabo II*: it required development by evidence not then in the record. Nor would anyone have faulted Szabo if he had developed the claim in *Szabo III* and then sought to present a different theory in a successive collateral attack. The state's contention—and the holding of *Szabo IV*—is that the claim was forfeited because it was not developed in *Szabo III*, when it should have been. The district judge did not come to grips with that contention. A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time—as state rules define those courts, ways, and times. See *Wainwright v. Sykes*, 433 U.S. 72 (1977). Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review. See *Harris v. Reed*, 489 U.S. 255 (1989).

No one could doubt that this forfeiture decision is *independent* of federal law, as that term is used in collateral-review jurisprudence. See *Stewart v. Smith*, 122 S. Ct. 2578 (2002); *Ake v. Oklahoma*, 470 U.S. 68 (1985). Szabo does question whether the ruling is *adequate* to block federal review. To be adequate, a state's procedural rule must be proclaimed in advance and regularly followed. See, e.g., *Lee v. Kemna*, 534 U.S. 362 (2002); *Johnson v. Mississippi*, 486 U.S. 578 (1988); *Liegakos v. Cooke*, 106 F.3d 1381, rehearing denied, 108 F.3d 144 (7th Cir. 1997). Ever since 1964 the law on the books in Illinois has specified that a prisoner is entitled to only one post-conviction proceeding. 725 ILCS 5/122-3. The decision in *Szabo IV* enforcing this norm cannot be condemned as retroactive and thus inadequate. Nor is it "inadequate" as irregular, freakish, or invoked in an unprincipled way in order to discriminate against the federal theory of relief.

On appeal in *Szabo III*, Szabo contended that Ill. Sup. Ct. R. 651(c) required his post-conviction lawyer to do more than he had done to develop the ineffective-assistance contention. The Supreme Court of Illinois rejected that proposition as a matter of state law but had second thoughts, and in *People v. Johnson*, 154 Ill. 2d 227, 609 N.E.2d 304 (1993), held that post-conviction counsel must do more to satisfy Rule 651(c) than Szabo's post-conviction counsel had done. *Szabo IV* held that *Johnson* does not give Szabo a second chance. If we had to decide whether *Johnson* shows that the approach that *Szabo III* took to the interpretation of Rule 651(c) were "regularly followed" we would need to decide whether *Johnson* was a change in the law, or whether instead *Szabo III* was an aberration in the application of settled law. (That question divided the Supreme Court of Illinois four to three in *Szabo IV*, with the majority taking the view that *Johnson* had altered the law in a way that did not apply retroactively to Szabo.)

But it is not necessary to enter this arena, because the forfeiture does not stem from a contestable interpretation of Rule 651(c) by the state's supreme court. After all, that court concluded that counsel had complied functionally with Rule 651(c) and that formal noncompliance (the lack of a certificate) was harmless. Nor does forfeiture lie in appellate counsel's failure to pursue a sixth-amendment claim on appeal in *Szabo III*—for by then it was too late, and the only sensible avenue was the road taken, a request for a new hearing at the trial level, where the forfeiture had occurred. The root problem was counsel's failure on the initial collateral review to develop the sixth-amendment claim by adducing evidence that failure to call the guards to the stand during the second sentencing hearing impaired Szabo's chance of obtaining lenity. That depended on what the guards would have said if called—and as the record was silent, Szabo's claim was sunk. Failure to develop the record with essential evidence invariably means forfeiture. Rule 651(c) played a leading role on appeal in *Szabo III* because Szabo used his lawyer's (asserted) noncompliance with his duties under that rule as an *excuse* that would permit him to start anew. In other words, Szabo contended that the state had not furnished post-conviction counsel of the quality that the state had promised (through Rule 651(c)) to supply. He asked the Supreme Court of Illinois in *Szabo III* to use state law to give him a new hearing with a better lawyer who would procure the vital evidence then missing from the record. The state decided that he was not entitled to that relief—that the legal services he received had met the state's standards of quality.

Let us suppose that this is wrong (as the three dissenting justices concluded in *Szabo IV*) and that Szabo did *not* enjoy the high standard of legal services that Illinois seeks to provide on post-conviction review. Still, all that would mean is that Szabo did not receive the effective assistance of *post*-conviction counsel—and it is settled as a matter of federal

law that poor post-conviction lawyering does not relieve a prisoner of what is otherwise a forfeiture under state law. See, e.g., *Coleman v. Thompson*, 501 U.S. 722, 752-57 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). See also 28 U.S.C. §2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). That is to say, ineffective assistance of post-conviction counsel does not supply "cause" for the cause-and-prejudice formula under which federal courts sometimes entertain claims that were not properly presented to the state courts. Szabo therefore cannot show a sufficient "cause" for any forfeiture. Because the last state court to consider the issue unambiguously invoked a forfeiture doctrine, the lack of evidence at the trial level in *Szabo III* supplies an independent and adequate state ground of decision. Szabo's ineffective-assistance claim was not preserved in state court and cannot furnish the basis for a writ of habeas corpus.

Szabo offers an additional argument in support of his judgment: that during the second sentencing the judge violated the Confrontation Clause by admitting transcripts of five witnesses' testimony from the first sentencing, even though these witnesses were not shown to be unavailable at the time of the second sentencing. In *Szabo II* the Supreme Court of Illinois held that failure to make a post-sentencing motion for a new hearing forfeited this contention, see 497 N.E.2d at 999, and the district judge agreed. Szabo contends that the state's forfeiture decision was "inadequate" as a matter of federal law because *Szabo II* applied to him a doctrine that did not become firmly established in Illinois until after the second sentencing. The state defends the Supreme Court's forfeiture decision in *Szabo II* and adds that in its view the question is not properly before us in the first place, because Szabo did not

seek or obtain a certificate of appealability authorizing him to present this issue for appellate decision.

Since 1996 both state and federal prisoners have needed certificates of appealability to obtain appellate review of adverse decisions in collateral attacks. 28 U.S.C. §2253. But the statute deals only with *appeals* by prisoners; it does not mention arguments by prisoners *as appellees* offered in support of relief they have obtained. Section 2253(c)(1) begins: "Unless a circuit justice or judge issues a certificate of appealability, *an appeal may not be taken* to the court of appeals from—") (emphasis added). Szabo has not taken an appeal, nor did he need to do so. An appellee may defend his judgment on any ground properly preserved in the district court. Compare *Massachusetts Mutual Life Insurance. Co. v. Ludwig*, 426 U.S. 479 (1976), with *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479-81 (1999). Szabo does not ask for additional relief, so he was entitled to proceed exactly as he has done. Two opinions—*Ainsworth v. Woodford*, 268 F.3d 868 (9th Cir. 2001), and *Williams v. Cain*, 125 F.3d 269 (5th Cir. 1997)—assume that a certificate of appealability is needed for a prisoner's cross-appeal, and this is a plausible understanding of §2253(c) (though neither court discussed the question). But no court has demanded that a prisoner obtain a certificate of appealability in order to present an extra issue in a case already before the court on the state's appeal, and we are content to apply §2253 as it is written. It serves a gatekeeping function, see *Ramunno v. United States*, 264 F.3d 723 (7th Cir. 2001), and once a case is properly before the court of appeals—for state and federal governments need not obtain certificates of appealability, see Fed. R. App. P. 22(b)(3)— there are no remaining gates to be guarded.

*Szabo II*, which held that Szabo failed to preserve his Confrontation Clause contention, is incontestable as a matter of state law; the Supreme Court of Illinois has

resolved any dispute about what state law required Szabo to do. Whether this decision is "adequate" is, however, a question of federal law. Relying on *Liegakos*, Szabo contends that the decision is inadequate because the requirement of a motion for a new sentencing hearing was not announced until after it was too late for his counsel to make such a motion. The parties have engaged in an extended debate about what Illinois required along these lines during the mid-1980s. We think it unnecessary to resolve this arcane procedural point, because Szabo's legal position is defective on the merits. He contends that under the Confrontation Clause the transcripts of the five witnesses' testimony at the first sentencing could be used only if they were unavailable at the time of the second sentencing hearing—and that the record does not demonstrate unavailability. Yet the Supreme Court has held that the Confrontation Clause does not apply to capital sentencing. It applies through the finding of guilt, but not to sentencing, even when that sentence is the death penalty. See *Williams v. New York*, 337 U.S. 241 (1949).

Since *Gregg v. Georgia*, 428 U.S. 153 (1976), and *Lockett v. Ohio*, 438 U.S. 586 (1978), the law of capital sentencing has changed considerably. Nonetheless, the Supreme Court of the United States has never questioned the precise holding of *Williams v. New York*, and we are not entitled to do so in this collateral attack. Szabo's sentence became final in 1986, and post-1986 developments could apply on collateral review only under rare circumstances. See *Teague v. Lane*, 489 U.S. 288 (1989); *Tyler v. Cain*, 533 U.S. 656 (2001). See also 28 U.S.C. §2254(d)(1) (to obtain collateral relief a state prisoner must show that his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly *established* Federal law, *as determined by the Supreme Court of the United States*") (emphasis added); *Williams v. Taylor*, 529 U.S. 362, 405-06, 412 (2000).

Attempting to sidestep *Teague*, Szabo relies on *Specht v. Patterson*, 386 U.S. 605 (1967), which holds that the Confrontation Clause applies during those portions of a sentencing proceeding that can lead to an increase in the maximum lawful punishment. *Specht* is a precursor of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 122 S. Ct. 2428 (2002), which hold that facts increasing the statutory maximum punishment must be proved, to the jury's satisfaction, beyond a reasonable doubt, using the procedures normally employed at a trial— which per *Specht* includes the opportunity to confront and cross-examine one's accusers in the flesh. Unfortunately for Szabo, however, in order to apply *Apprendi* to capital sentencing, *Ring* first had to overrule *Walton v. Arizona*, 497 U.S. 639 (1990). Given *Teague*, it is *Walton* and not *Ring* that governs Szabo's claims on collateral attack. See *Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002) (*Apprendi* does not apply retroactively on collateral attack). *Specht* itself just won't do the job. It distinguished *Williams v. New York* on the ground that Colorado's capital sentencing procedure (the one at issue in *Specht*) can boost the maximum lawful punishment. Illinois has such a proceeding too—but this is not the one at which the transcripts were used against Szabo.

Illinois handles capital cases in three phases. First is the guilt phase where the jury decides whether a crime occurred, next is the capital-eligibility phase where the jury decides whether at least one aggravating circumstance applies, and finally comes the balancing phase, where the jury weighs aggravating and mitigating circumstances to select a sentence. *Specht* dealt with a proceeding of the second kind. Szabo waived the opportunity to have such a proceeding and stipulated that he was eligible for the death sentence. (The multiple-murder aggravating circumstance was all it took, and there was no point denying it given the outcome of the guilt phase.) Only during the third, balanc-

ing phase of the Illinois procedure was the transcribed testimony used, and that phase is outside the ambit of *Specht* because the stipulation that pretermitted the second phase already had lifted the maximum punishment to a sentence of death.

We need not attempt to predict how the Supreme Court's jurisprudence will develop; *Apprendi* and *Ring* may portend more changes and may eventually be applied to the balancing phase of capital sentencing, as Szabo contends that they should. But they were not so applied (indeed, did not exist) in 1985, and *Specht*, which did predate Szabo's sentencing, does not support his position. As late as 1990, in *Walton*, the Supreme Court rendered a decision strongly supporting the state's perspective. *Williams v. New York* shows that in 1985 Illinois was entitled to proceed as it did.

The judgment is reversed, and the case is remanded for entry of an order denying Szabo's petition for a writ of habeas corpus.

RIPPLE, *Circuit Judge*, dissenting. The State of Illinois proposes to put Mr. Szabo to death despite the fact that, in its own state courts, he did not receive the quality of legal representation required by state law. Nor was his claim of ineffective assistance of resentencing counsel addressed with precision or care by the Illinois courts. Despite this stark reality, we are required to limit our inquiry to the complex and difficult question of whether the federal courts can afford him any relief. Our authority is limited; we may inquire only as to whether a federal right, properly raised and preserved in earlier state proceedings, was so unrea-

sonably adjudicated in the state courts as to justify our intervention.

The State takes the view that we cannot reach the merits of Mr. Szabo's ineffective assistance of resentencing counsel claim. In its view, Mr. Szabo has procedurally defaulted this claim. My colleagues agree; they believe that Mr. Szabo procedurally defaulted his Sixth Amendment claim when he failed to submit affidavits in support of this claim in his first post-conviction petition. In their view, this forfeiture is analytically separate from the Supreme Court of Illinois' "contestable" interpretation of Rule 651(c) in *Szabo III* that Mr. Szabo's counsel "had complied functionally with Rule 651(c)" even though that counsel did not attach the necessary affidavits to conform the petition to state-law requirements. *See* slip op. at 6. In my view, Mr. Szabo's failure to submit the required affidavits in the first post-conviction review and the state court's treatment of that failure on appeal from that determination cannot so easily be unbundled for purposes of determining whether there has been a procedural default that bars federal review of Mr. Szabo's federal claim that resentencing counsel failed to render constitutionally effective assistance of counsel. In the following paragraphs, I shall set forth more fully the reasons for my taking this view.

## A.

Our focus will be sharpened by beginning with some basic and undisputed principles. We begin with the fundamental rule that we shall not address a question of federal law raised in a habeas petition if the decision of the state court "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Lee v. Kemna*, 534 U.S. 362, 375 (2001) (quoting *Coleman v. Thompson*, 501 U.S. 722 (1991)). This rule applies with equal force whether the rule is substantive or procedural in

nature. *Id.* at 376. Under this principle, "if a state court did not reach a federal issue because it applied, evenhandedly, a state procedural rule, the matter is closed to the federal habeas court absent a showing of cause and prejudice." *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993) (citing *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977)). However, the Supreme Court consistently has made clear that whether an asserted procedural ground is independent and adequate, and therefore a bar to federal relief, is a federal question. *See Henry v. Mississippi*, 379 U.S. 443, 447 (1965); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988).

As my colleagues note, there is no question that the decision of the Supreme Court of Illinois in *Szabo III*—that his counsel had complied with the requirements of Rule 651(c)—was independent of Mr. Szabo's constitutional claim of ineffective assistance of resentencing counsel. *See* slip op. at 5. The state's determination of procedural default, however, must also be adequate. Our case law consistently has required that, in order to be adequate, the procedural rule must be applied in a "consistent and principled way." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990). A state rule is "consistent and principled" when it is "firmly established and regularly followed." *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999); *Rosa v. Peters*, 36 F.3d 625, 633 (7th Cir. 1993); *see also Johnson*, 486 U.S. at 587; *James v. Kentucky*, 466 U.S. 341, 348-51 (1984); *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002); *Duncan v. Cain*, 278 F.3d 537, 542 (5th Cir. 2002). "State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)); *see also Romano v. Gibson*, 239 F.3d 1156, 1170 (10th Cir. 2001), *cert. denied*, 122 S. Ct. 624 (2001); *Willis*, 8 F.3d at 561. We therefore must determine whether Illi-

nois' application of a state waiver doctrine is adequate to support its judgment and preclude federal habeas review.

## B.

In Mr. Szabo's first state post-conviction petition, he alleged that both his original trial counsel and his resentencing counsel were constitutionally ineffective. With respect to resentencing counsel, one of Mr. Szabo's allegations was that his counsel failed to introduce mitigating evidence in the form of testimony of prison employees. Mr. Szabo's counsel in the first state post-conviction proceeding did not substantiate those claims with affidavits or other support. Consequently, the state trial court dismissed those claims as unsubstantiated. This decision was reviewed by the Supreme Court of Illinois in *Szabo III*. In that appeal, Mr. Szabo argued that his counsel in the trial-level state post-conviction proceeding had not provided him with the representation required by state law because he had not provided the court with the necessary affidavits to support his claim that his resentencing counsel had been constitutionally ineffective.[1] Consequently, Mr. Szabo submitted, his pre-existing federal right to competent counsel at the resentencing hearing had not been presented adequately to the trial court at the state post-conviction hearing. Because a determination that resentencing counsel was constitutionally inadequate would constitute "cause" for the failure to develop the case at resentencing, Mr. Szabo argued that he was entitled to another post-conviction hearing at which counsel would establish, with the requisite support, the constitutional ineffectiveness of resentencing counsel.

---

[1] Notably, his argument was *not* that his post-conviction counsel had been ineffective in the constitutional sense, but that his right to effective assistance of post-conviction counsel as guaranteed by state law had been violated.

Although there is no federal right to counsel in state post-conviction proceedings, *see Pennsylvania v. Findley,* 481 U.S. 551, 555 (1987), Illinois has chosen to require that counsel representing defendants in such actions meet certain state-imposed standards. Today, and at all times pertinent to this case, those standards are embodied in Rule 651(c). However, even prior to the adoption of Rule 651, the Supreme Court of Illinois had set forth the responsibilities of post-conviction counsel under the Illinois Post-Conviction Hearing Act in terms that are relevant to our present inquiry:

> To the end that the complaints of a prisoner with respect to the validity of his conviction might be adequately presented, the statute contemplated that the attorney appointed to represent an indigent petitioner would consult with him either by mail or in person, ascertain his alleged grievances, examine the record of the proceedings at the trial and then amend the petition that had been filed Pro se, so that it would adequately present the prisoner's constitutional contentions. The statute can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court.

*People v. Slaughter*, 235 N.E.2d 566, 569 (Ill. 1968). Applying this standard in *People v. Garrison*, 251 N.E.2d 200 (Ill. 1969), the Supreme Court of Illinois reversed a circuit court order dismissing a petition in which "[t]he record d[id] not affirmatively show" that appointed counsel had conferred with the defendant prior to filing the post-conviction petition. *Id.* at 201.

Rule 651 was adopted in 1969 and requires in pertinent part:

> The record [on appeal on a collateral attack] shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional right, has examined the record of proceedings at the trial, and has made any amendments to the petition filed Pro se that are necessary for an adequate presentation of petitioner's contentions.

Ill. S. Ct. R. 651(c). Applying the recently adopted rule, the Supreme Court of Illinois in *People v. Brown*, 287 N.E.2d 663 (Ill. 1972), remanded a case to the circuit court because post-conviction counsel failed to comply with the "examination" portion of the rule. In *Brown*, post-conviction counsel had received a letter from the defendant stating that he believed that he had "other grounds that I could rely on but they're in the court records concerning my first post-conviction hearing . . . ." *Id.* at 664. Counsel took this assertion to mean that the petitioner's other complaints already had been presented by way of an initial post-conviction proceeding and, consequently, the petitioner had no right to proceed on the current petition. On appeal, the Supreme Court of Illinois stated:

> Without considering the necessity of a consultation with the petitioner concerning the contents of the letter received by the attorney on the morning of the hearing, it is clear there is nothing in the record to show that appointed counsel examined the record of the petitioner's trial proceedings. The State does not dispute this but first replies that there is nothing to indicate that counsel did not examine the trial record. There is no merit to this reply, for Rule 651(c) explicitly requires a showing that counsel has examined the trial record.

*Id.* at 665. The Illinois appellate courts also routinely have reversed trial court dismissals of post-conviction petitions

if post-conviction counsel had failed to meet the requirements of Rule 651(c) to consult, to review or to present the claims. *See, e.g., People v. Treadway*, 615 N.E.2d 887, 890 (Ill. App. Ct. 1993) (remanding for further post-conviction proceedings in part because "counsel did not amend the petition to present the claim adequately"); *People v. Alexander*, 554 N.E.2d 1078, 1079-80 (Ill. App. Ct. 1990) (stating that "[a]bsent an affirmative showing on the record, we cannot presume that post-conviction counsel fulfilled his obligation to review the trial record," holding that "[i]t is error to dismiss a post-conviction petition on the pleadings where, as here, there has been no showing of adequate representation by counsel, even where the petition itself failed to present a substantial constitutional claim," and remanding for further post-conviction proceedings); *People v. Allen*, 502 N.E.2d 1260, 1263 (Ill. App. Ct. 1987) (remanding petition when counsel had failed to amend petition to include an affidavit from the defendant explaining how defendant would have testified had he not followed counsel's advice to remain silent).

In other cases, the Supreme Court of Illinois, applying the above standard, concluded that post-conviction counsel had complied with the requirements of Rule 651(c). For instance, in *People v. Owens*, 564 N.E.2d 1184 (Ill. 1990), the petitioner alleged that his counsel had not met his obligations under Rule 651(c) because his counsel "failed to introduce any such evidence in support of the ineffective assistance claim." *Id.* at 1191. The court held otherwise:

> The record shows that counsel consulted with the petitioner and filed an amended post-conviction petition which raised numerous allegations of trial error. It would have been impossible for counsel to have raised many of these errors without having examined the record of the proceedings at trial. In addition, petitioner's post-conviction counsel presented adequate evidence in support of the ineffective-assistance claim at

> the evidentiary hearing on the post-conviction petition. For example, he questioned Scott Belford, the petitioner's trial counsel, at length regarding his failure to request a hearing to determine the defendant's competency to stand trial and be sentenced. Petitioner's counsel also questioned Belford regarding his failure to call the defendant's father to testify in mitigation, his failure to introduce the defendant's school records and his failure to introduce evidence of the defendant's psychological problems in mitigation at sentencing. In addition, petitioner's counsel called the petitioner to testify, so that he might advise the court of mitigation witnesses who were not called and to explain what those witnesses might have said in mitigation. Because the record demonstrates that petitioner's counsel adequately presented the petitioner's ineffective-assistance claim, we reject the petitioner's contention that his post-conviction counsel did not comply with Rule 651(c).

*Id.* at 1191 (parallel citation omitted).

It was against this background that the Supreme Court of Illinois decided Mr. Szabo's appeal from his first post-conviction hearing. In denying relief, the Supreme Court stated that post-conviction counsel's failure to file the requisite affidavit under Rule 651(c) was of no consequence because the record affirmatively demonstrated that counsel had fulfilled these responsibilities:

> This court has held that Rule 651(c) works in conjunction with the Post-Conviction Hearing Act to ensure that counsel appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court. Rule 651(c), therefore, requires that the record on appeal disclose that appointed counsel took the necessary steps to secure adequate representation of petitioner's claims. Failure of ap-

> pointed counsel to file a Rule 651(c) certificate of compliance is harmless error if the record establishes that counsel met the requirements of the rule. The record indicates that there was considerable communication between post-conviction counsel and defendant, and that defendant received reasonable assistance of counsel as contemplated by the rule. Transcripts include comments by post-trial counsel regarding his recent conversations with defendant. Counsel called defendant's father to testify about hiring Landau. Additionally, counsel secured investigative services from the court and conducted an exhaustive search for Landau. Looking beyond certification to the attorney's actions, the record clearly supports the trial court finding of effective assistance of appointed counsel.

*Szabo III*, 582 N.E.2d at 176 (internal quotation marks and citations omitted).

In *Szabo III*, the Supreme Court of Illinois correctly stated the standard it had developed in earlier cases, but it failed to apply that standard properly to the claims raised. As noted above, the Supreme Court of Illinois in *Szabo III* stated that Rule 651(c) requires counsel to "ascertain[] the basis of [the petitioner's] complaint*s*, shape[] *those complaints* into appropriate legal form and present[] *them* to the court." *Id.* (emphasis added). Although the court properly recited the standard in the plural—and thus applicable to all of the petitioner's complaints—it did not apply the standard to each of the allegations in the post-conviction petition.

Mr. Szabo had two primary complaints in his first post-conviction petition: 1) David Landau, his trial attorney, "had been prevented from rendering effective assistance of counsel to defendant due to disciplinary problems which led to Landau's subsequent disbarment"; and 2) Mr. Szabo did not receive effective assistance of resentencing counsel because that counsel had not called prison employees to

testify to Mr. Szabo's adjustment to prison life. *Id.* at 174. The court, however, did not analyze whether counsel had fulfilled his responsibilities under Rule 651(c) with respect to each of these claims. The court found compliance with the rule based only on counsel's actions with respect to the first of these claims:

> The record indicates that there was considerable communication between post-conviction counsel and defendant, and that defendant received reasonable assistance of counsel as contemplated by the rule. Transcripts include comments by post-trial counsel regarding his recent conversations with defendant. Counsel called defendant's father to testify about hiring Landau. Additionally, counsel secured investigative services from the court and conducted an exhaustive search for Landau. Looking beyond certification to the attorney's actions, the record clearly supports the trial court finding of effective assistance of appointed counsel.

*Id.* at 176. Notably, nothing is said about post-conviction counsel's failure to present, in the fashion contemplated by Rule 651(c), the contention that resentencing counsel had performed in a constitutionally inadequate manner by failing to present available evidence with respect to Mr. Szabo's behavior while incarcerated. Because the court in *Szabo III* did not consider the requirements of Rule 651(c) with respect to *each* of Mr. Szabo's claims, its analysis does not comport with the standards it had set forth in its earlier cases.

The failure to decide *Szabo III* in conformity with the established body of precedent becomes even more clear upon examination of developments after this deviation. Shortly after its decision in *Szabo III,* the Supreme Court of Illinois returned to the question of counsel's obligations under Rule 651(c) in *People v. Johnson*, 609 N.E.2d 304 (Ill. 1993). In that case, the petitioner alleged that "his post-

conviction counsel did not adequately represent him be-cause he did not amend the pro se petition in the manner necessary to adequately present the petitioner's claims." *Id.* at 309. Specifically, "post-conviction counsel failed to inter-view any of the witnesses named in the post-conviction peti-tion, marshaled no evidence in support of the petitioner's contentions, attached no affidavits or other records to the amended petition, and failed to explain the absence of supporting documentation." *Id.* at 309-10. The Supreme Court of Illinois held that counsel had failed to comply with the requirements of the rule; it stated:

> In the ordinary case, a trial court ruling upon a mo-tion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reason-ably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so. Here, however, this presumption is flatly contradicted by the record. Post-conviction counsel filed an affidavit as a supplemental record in this appeal, which unequivo-cally establishes that counsel made no effort to investi-gate the claims raised in the defendant's post-convic-tion petition or to obtain affidavits from any of the witnesses specifically identified in the defendant's *pro se* petition. To adequately establish the manner in which post conviction counsel deviated from his duties, it is necessary to discuss in some detail post-conviction counsel's actions as to each claim raised in the post-conviction petition.
>
> . . .
>
> Post-conviction counsel's affidavit, which was filed in this court, likewise states that he made no attempt to contact two of the parole officers named in the post-conviction petition, and that he was unable to reach the third parole officer. Counsel failed to take any action to

> obtain the affidavits of potential witnesses whose identities were known to him for more than two years during which the post-conviction petition was pending.

*Id.* at 311-12.

Reviewing these cases, it is apparent that the Supreme Court of Illinois has articulated a consistent rule concerning the adequacy of post-conviction counsel's performance under Rule 651(c). Those cases have held that, absent a certification of compliance, there must be evidence in the record demonstrating that counsel has performed the three distinct duties stated in the rule: consultation, examination of the record and amendment of the petition. If counsel has not performed these responsibilities with respect to each of the petitioner's complaints, a remand for additional post-conviction proceedings is warranted. In *Szabo III*, however, it failed to apply this standard to each of the claims raised by Mr. Szabo. It did not address the application of this standard to the crucial matter of his post-conviction counsel's failure to make the case that Mr. Szabo's resentencing counsel was constitutionally ineffective by failing to present important evidence of Mr. Szabo's behavior while incarcerated.

## C.

After the decision of the Supreme Court of Illinois in *People v. Flores*, 606 N.E.2d 1078 (1992), it is well-established that, as a general rule, a petitioner cannot raise non-compliance with Rule 651(c) in a second post-conviction petition. Prior to that decision, at least two decisions of the Supreme Court of Illinois, *People v. Hollins*, 280 N.E.2d 710 (Ill. 1972), and *People v. Slaughter*, 235 N.E.2d 566 (Ill. 1968), had suggested that, when post-conviction counsel had not performed his responsibilities under Rule 651, subsequent filings would be allowed. *Flores*, however, made

it very clear under what circumstances it would allow ineffective assistance of counsel claims to be raised in a successive post-conviction petition:

> In sum, where a defendant files a second or subsequent post-conviction petition in which he claims sixth amendment ineffective assistance of prior post-conviction counsel, because there is no right to sixth amendment counsel in post-conviction proceedings, such claims do not present a basis upon which relief may be granted under the Act. Further, where a defendant files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, because the Act is confined to errors which occurred in the original proceeding, only, such claims are beyond the scope of the Act.

> Where, however, a defendant files a second or subsequent post-conviction petition in which he raises meritorious claims of ineffective assistance of appellate counsel, which could not have been raised in a prior post-trial proceeding, the defendant is entitled to consideration of those claims.

*Flores*, 606 N.E.2d at 1086.[2] Consequently, after *Flores* (which preceded Mr. Szabo's filing of his second post-conviction petition), substandard performance by state post-conviction counsel is no longer a basis for relief in a second state post-conviction petition.

In any event, the Supreme Court of Illinois' treatment of the second post-conviction petition, even if it should not

---

[2] *See also People v. Pitsonbarger*, No. 89368, 2002 WL 1038729 (Ill. May 23, 2002), *cert. denied*, No. 02-6027, 2002 WL 31027368 (Dec. 2, 2002) (clarifying that, absent a claim of actual innocence or ineligibility for the death penalty, cause and prejudice must be shown in order for a court to entertain a successive post-conviction petition).

have been entertained, demonstrates graphically that it had deviated from its usual course of proceeding in *Szabo III*. In *Szabo IV*, the Supreme Court of Illinois' struggle to find a principled basis for denying further review of the claim demonstrates the difficulty posed by its earlier decision. Three justices believed that Mr. Szabo should be precluded from filing a second petition because he could not rely on the intervening decision in *Johnson.* They wrote: "We do not believe that *Johnson* controls the outcome of the present case, any more than we believe that *Johnson* governs other post-conviction matters that were concluded long ago." *Szabo IV*, 708 N.E.2d at 1096. If the justices were claiming that *Johnson* set forth a new procedural rule not applicable retroactively on collateral review, their opinion never identifies that new procedural rule.[3] Indeed, as noted earlier, *Johnson* fits comfortably within the entire line of cases setting forth the requirements of Rule 651(c). If the justices intended to convey, as two of their colleagues appear to have believed, that Mr. Szabo was precluded by the doctrine of res judicata, they fail to explain how that doctrine could be applicable when Mr. Szabo squarely raised the issue of his counsel's lack of compliance but the Supreme Court of Illinois in *Szabo III* failed to adjudicate the matter.

In short, *Szabo IV* demonstrates *Szabo III*'s failure to apply the established law of Illinois in an evenhanded manner. Mr. Szabo never has received an adjudication of the contention that the failure of resentencing counsel to bring pertinent information to the attention of the court was constitutionally inadequate representation that constitutes "cause" for purposes of avoiding procedural default in the federal habeas context. Under state law, he had the

---

[3] Neither in *Szabo IV*, nor in any of its subsequent cases, has the Supreme Court of Illinois really grappled with the issue of whether *Johnson* represents a "new rule," why it represents a new rule, or what that rule is.

right to have that failure on the part of resentencing counsel brought to the attention of the post-conviction court through the efforts of counsel. Although otherwise uniformly ensuring that right to other defendants, the Supreme Court of Illinois denied that protection in this case—a case when the evidence at issue was a vital part of Mr. Szabo's attempt to convince the trier of fact to spare his life.

### D.

Let us now return to the basic principles set forth in Part A. As noted there, my colleagues can dismiss quickly the question of the "adequacy" of the state rule only because they believe that Mr. Szabo committed a final forfeiture incapable of remedy when counsel failed to develop the ineffective assistance of resentencing counsel claim at the trial level of the first state post-conviction hearing. *See* slip op. at 6. By artificially cabining the forfeiture in the trial court, my colleagues need not explain the significance of the consistent (with the exception of this case) approach of the Supreme Court of Illinois to afford relief to post-conviction petitioners whose deficient petitions were attributable to their counsels' failure to comply with Rule 651(c).

I cannot share this artificial view of the nature of the state forfeiture. It is true that, under Illinois law, "a post-conviction petition may be dismissed without an evidentiary hearing where the petition raises claims outside the record which are not supported by affidavits or other documents." *Johnson*, 609 N.E.2d at 249. However, infirmities in the post-conviction petition cannot be separated from the rest of the post-conviction process. That process anticipates the involvement of competent counsel. Indeed, the Supreme Court of Illinois has stated that "Rule 651(c) establishes the level of assistance appointed counsel *must* provide to post-conviction petitioners." *People v. Williams*, 708 N.E.2d 1152, 1154 (Ill. 1999) (emphasis added). When

the record, as developed in the trial court, reveals that counsel has not complied with his or her responsibilities under Rule 651(c), the result has been a remand for further post-conviction proceedings. *See supra* at Part B. Consistently, the Supreme Court of Illinois has treated Rule 651(c) non-compliance as an exception to the general rule that unsupported petitions must be dismissed. Rule 651(c) requires counsel to "make any amendments to the petitions filed pro se that are necessary for an adequate presentation of petitioner's contentions." *People v. Kluppelberg*, 764 N.E.2d 1182, 1185 (Ill. App. Ct. 2002) (internal quotation marks and citations omitted). Furthermore, this requirement applies to each claim raised by the petitioner. *See Johnson*, 609 N.E.2d at 311-12; *cf. People v. Moore*, 727 N.E.2d 348, 359 (Ill. 2000) (analyzing compliance with 651(c) on a claim-by-claim basis). Failure to meet Rule 651(c)'s requirements has consistently resulted in a remand of the matter for additional consultation, proper review, or adequate presentation of the claims. *See supra* at Part B. Although the Illinois Supreme Court paid lip-service to these requirements in *Szabo III*, it did not apply these standards to each of Mr. Szabo's ineffective assistance claims. Had the Illinois Supreme Court acted in conformity with Illinois case law, it would have taken note of counsel's failure to support the claim of constitutionally ineffective assistance of counsel at resentencing with affidavits or other evidence. Furthermore, counsel's failure to present the claim adequately would have resulted in a remand to require counsel to fulfill this obligation under the rule. Because the Supreme Court of Illinois deviated from the ordinary and usual course of adjudication, its application was not evenhanded and, therefore, was not adequate for purposes of barring federal habeas review. Because the panel sanctions this departure and the consequent result to Mr. Szabo, I respectfully dissent.

A true Copy:

    Teste:


                  _____
                  ***Clerk of the United States Court of
Appeals for the Seventh Circuit***