In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3463

EARL JOHNSON,

*Petitioner-Appellant,*

*v.*

JOSEPH LOFTUS, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2475—**Marvin E. Aspen**, *Judge.*

ARGUED JANUARY 11, 2008—DECIDED FEBRUARY 21, 2008

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Following a jury trial in state court, Earl Johnson was convicted of murder, attempted first degree murder, and aggravated battery with a firearm. He was sentenced to concurrent terms of 45 years for the murder and 30 years each on the other charges. He appealed, and in an unpublished order on July 21, 1997, the Appellate Court of Illinois affirmed the murder and attempted murder convictions but reversed the aggravated battery conviction. The Supreme Court of Illinois denied leave to appeal. Johnson filed a postconviction petition, which was denied. He again appealed, and on March 31, 2004, the Appellate Court of Illinois affirmed the denial and the Illinois Supreme

Court again denied leave to appeal. Johnson's next stop was the United States District Court for the Northern District of Illinois, where he filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition was denied and he now appeals the judgment dismissing his petition.

Unless petitioner has rebutted the presumption of correctness that attaches to the state court findings of fact (and Johnson has not), we presume those facts are correct. 28 U.S.C. § 2254(e)(1). Here, the facts are that three brothers, Dexter, Darryl, and Leo Patterson, were walking down a street in Maywood, Illinois (a Chicago suburb), when Dexter and Leo were hit by gunshots fired from a passing car. Leo died as a result of a wound to his chest; Dexter was treated for a wound to his buttocks, but survived.

Darryl and Dexter testified at trial that before the shooting they had been walking down the street when they heard a man call Leo's name and ask "when are you going to pay my money." Leo said he would pay "next Friday." The man asked again and Dexter said, "Hey, he is going to pay your money." As the brothers continued walking, a dark blue, four-door car drove toward them. From within the car, two people shot at the brothers.

Darryl identified Johnson as one of the shooters— shooting from the back seat, passenger side of the car. Another shooter was in the front seat. Darryl and Dexter ran to Leo's house, which was nearby, where Darryl called the police and then ran outside to where Leo was lying on the grass. Leo was conscious but not talking. He died shortly after arriving at a hospital.

A few days later, Darryl went to the police station and identified a dark blue Skylark as the vehicle from which the shots were fired. Both Darryl and Dexter

identified Johnson from a lineup two weeks later and at trial.

Of the many, many issues Johnson has raised in various courts, the only one presented to us is his contention that he was denied the effective assistance of counsel based on three claimed deficiencies in the representation he received in state court.

As with all petitions for writs of habeas corpus, we cannot consider the merits unless the state courts have first had a full and fair opportunity to review the claims. That means first, that the petitioner must have exhausted his state court remedies, which Johnson has done. Further, if a specific claim is not presented to the state court when it is required to be, that claim is defaulted. *Farrell v. Lane*, 939 F.2d 409 (7th Cir. 1991). A procedural default also occurs when a state court disposes of a claim on an independent and adequate state law ground. *Coleman v. Thompson*, 501 U.S. 722 (1991). When a petitioner presents a defaulted claim for federal habeas review, we may consider it only if he can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice.

As to claims which we do consider, we "shall not" grant the writ on any claim that was, in fact, considered on the merits in the state court, unless the state court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 376 (2000). The Court has recently reemphasized that a state court's application of clearly established law is acceptable, even if it is likely incorrect, so

long as it is reasonable. *Wright v. Van Patten*, ___ S. Ct. ___, 2008 WL 59980 (2008). If, however, the state court decision is "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court, then our consideration is *de novo*. *Wiggins v. Smith*, 539 U.S. 510 (2003); *see also Williams*, 529 U.S. 362.

With these principles in mind, we turn to Johnson's claims that he was denied the effective assistance of counsel during the proceedings in state court. Johnson says that his counsel was ineffective for declining the offer of a mistrial after some of his alibi witnesses were precluded from testifying, for failing to pursue obvious lines of investigation, and for failing to impeach Dexter by the hospital records showing that his blood alcohol level was .289 on the night of the offense. The Illinois Appellate Court referred to *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate the claim of ineffective assistance. We say "referred to" rather than, for instance, "properly used" because Johnson contends that the decisions of the state appellate court are "contrary to" *Strickland* in that they show a misunderstanding of the standards set out in that case.

Johnson claims the state appellate court made two errors. The first arises in the decision on direct appeal. The Illinois court said that *Strickland* "prohibits judging ineffectiveness by second-guessing the actions of defense counsel." The use of the word "prohibits" is what Johnson objects to. However, immediately after this sentence, the court quotes *Strickland* on this point:

> Judicial scrutiny of counsel's performance must be highly deferential; a court must resist the temptation to second-guess counsel's actions and avoid the distorting effects of hindsight.

At 689. It seems to us to be rather picky to draw from this paragraph the conclusion that the state court did not

know what *Strickland* meant. Johnson then contends, however, that because of this misunderstanding, the court failed to analyze his claim. It is true that the court did not elaborate on the claim on direct review; however, it did consider the issue on appeal from his postconviction motion.

The second claimed error is in the decision reviewing Johnson's postconviction motion. The appellate court said that under *Strickland*, "a defendant must demonstrate that, but for defense counsel's deficient performance, the result of the proceeding would have been different." *Strickland*, of course, requires only that there be a "reasonable probability" that the outcome would have been different. However, on the very next page, in discussing possible prejudice from not pursuing Dexter's blood alcohol level, the court correctly states that Johnson had not shown a "reasonable possibility" that the outcome would have been different. On this issue as well, we cannot find that the state courts used a standard contrary to that set out in *Strickland*.

If we were to conclude that somehow the court's understanding was "contrary to" clearly established law, we would then consider the issue *de novo*. *Wiggins*, 539 U.S. 510. In this case, it would make little difference. Our independent view of Johnson's claims mirrors that of the state courts.

As the state court understood, under *Strickland*, our review of counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." At 689. Even when the claim is not subject to § 2254(d)(1) deference, a defendant must overcome the "presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.'" At 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

Johnson's first basis for claiming his counsel was deficient involves the exclusion of alibi witnesses. During the trial, four alibi witnesses were in the courtroom during the presentation of the state's case, in violation of an exclusion order. The judge determined they could not testify. Like the three other witnesses who were allowed to testify, the witnesses were prepared to say that, at the time of the murder, they were with Johnson watching a video—*Home Alone 2*. The excluded witnesses were Johnson's brother, his one-time girlfriend, his mother's boyfriend, and possibly his mother. Whether his mother belongs in this group is a question mark because the parties stipulated to her proposed testimony that she received an invoice for the movie which she rented that day.

When the witnesses were excluded, the judge asked whether Johnson wanted a mistrial. After a recess, counsel declined and decided to proceed with the trial. The Illinois Appellate Court determined that counsel made a strategic choice to forego the testimony. Johnson does not overcome the presumption that the choice was, in fact, strategic. There are many factors which could support the choice. The excluded witnesses all had some familial or romantic relationship with Johnson, and for that reason their testimony might have been no more compelling than the testimony of Johnson's other three alibi witnesses who did testify. Counsel could well have thought that three witnesses to the same event were sufficient. Perhaps he thought that the alibi testimony went so well he did not want to risk undermining it by calling other witnesses. Other considerations might have been that he had already revealed his hand in cross-examining the state's witnesses and did not want to face them in a second trial when they would be better

prepared to meet cross-examination. Or he might have thought he had lucked out and gotten a favorable jury. We don't know; and the reason we don't know is precisely because Johnson never asked, nor did counsel's affidavit, presented early in the proceedings, cover the matter. In the absence of information, we cannot say that the state court engaged in an unreasonable application of *Strickland* by presuming that counsel's choice was strategic. We would do the same.

Next, Johnson argues that his attorney was incompetent for failing to "canvass the neighborhood," which would have revealed another alibi witness. That witness was then-12-year-old Rushaun Hubbard. Hubbard says in an affidavit that he went to his living room window two to three minutes after hearing gunshots; he then went outside with his brother. He saw Johnson leaving his house, and Johnson asked him what was going on. The Illinois Appellate Court found that there was nothing in the record to show that Johnson had mentioned this incident to counsel. In addition, Johnson did not mention Hubbard in his trial testimony. Rather, he testified that he learned about the shooting from Frederick Johnson, who went outside the house where petitioner Johnson claims he was during the shooting and returned moments later, telling everyone that someone had been shot down the street. The court found that, in this context, counsel's performance was not deficient for failing to find Hubbard. We cannot say the court's finding was an unreasonable application of *Strickland.* Furthermore, the court pointed out that Hubbard's testimony was of questionable value and perhaps raised more questions than it answered. For instance, if Frederick had told everyone there was a shooting, why would Johnson ask Hubbard what was going on. Also, because Hubbard waited two to three minutes before going outside, Hubbard's testimony would not preclude that possibility that Johnson was the shooter.

Finally, Johnson claims that counsel was ineffective for failing to impeach Dexter Patterson with the medical test that showed his blood-alcohol level was .289—which Johnson argues would have cast doubt on his eye-witness testimony. The claim, however, was procedurally defaulted. The state appellate court explicitly held that Johnson waived the argument by failing to comply with the Illinois procedural requirement that petitioners raise all claims in their postconviction petition.

As we said in *Szabo v. Walls*, 313 F.3d 392, 395 (2002),

> A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time—as state rules define those courts, ways, and times.

Failure to comply with those rules furnishes an "independent and adequate state ground" that "blocks federal collateral review." *Id.* We also found in *Szabo* that Illinois has long had a law which states that a prisoner is entitled to only one postconviction proceeding.

In Johnson's case, despite the default, the state appellate court went on to note that, even if the evidence had been admitted, there was no reasonable possibility that the outcome of the trial would have been different. Darryl Patterson testified that Dexter was intoxicated on the night of the shooting. While the exact blood-alcohol level might have given Johnson's case a bit of a boost, we could not say, were we able to consider the issue, that the Illinois court's application of the *Strickland* standard was unreasonable.

Accordingly, the judgment of the district court is AFFIRMED.